UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
HOWARD TAFLER,                            )
                                          )
                Plaintiff,                )
                                          )
        v.                                )        Civil Action No. 05-1563 (PLF)
                                          )
DISTRICT OF COLUMBIA, <u>et al.</u>,      )
                                          )
                Defendants.               )
_____)


<u>OPINION</u>

        This is a constitutional and common law tort action in which the plaintiff seeks to

recover damages following an allegedly false arrest involving the use of excessive force by two

police officers.  The matter is before the Court on two motions.  The first is individually-named

defendant Oscar Grajales' motion to dismiss for insufficient service of process pursuant to Rule

12(b)(5) of the Federal Rules of Civil Procedure.  The second is the District of Columbia's

motion to dismiss for insufficient service of process pursuant to Rule 12(b)(5) and for failure to

state a claim upon which relief can be granted for some of plaintiff's claims pursuant to Rule

12(b)(6).  Individually-named defendant Anthony Hector has joined the District of Columbia's

motion to dismiss.

        Upon consideration of the motions to dismiss, the oppositions and the replies, the

Court concludes that the plaintiff did not properly serve Officer Grajales in accordance with Rule

4(e) of the Federal Rules of Civil Procedure and Rule 4(e) of the District of Columbia Superior

Court Civil Rules, but that he did effect proper service on the District of Columbia and on

Officer Hector.  With respect to the District of Columbia's motion to dismiss certain claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court concludes that: (1) Counts V (intentional infliction of emotional distress), VI (assault and battery), VIII (false arrest) and IX (false imprisonment) are barred by the statute of limitations; (2) plaintiff has failed to plead facts sufficient to state a claim of negligence in Counts VII and X; (3) plaintiff has failed to state a claim for violation of his right to procedural due process in Count II; (4) plaintiff has failed to state a substantive due process claim in Count II because the Fourth Amendment provides the explicit substantive protection to which he is entitled; and (5) plaintiff's conspiracy claim in Count III is barred by the intracorporate conspiracy doctrine.  Defendants have not moved to dismiss Counts I (Fourth Amendment violations) and IV (failure to train, supervise and control) pursuant to Rule 12(b)(6) and those counts will not be dismissed.

## I. BACKGROUND

Plaintiff alleges that, on or about August 4, 2002, Officers Grajales and Hector of the Metropolitan Police Department approached plaintiff from behind and violently knocked him to the ground in the alley behind plaintiff's apartment in the 1700 block of U Street, N.W.  See Amended Complaint ("Am. Compl.") ¶ 9.  Plaintiff further alleges that the defendant officers kicked him severely, causing him injuries including ringing in his head and ears, swelling in both knees, a bone chip in his elbow and lacerations to his face that have left permanent scars on his lip and chin.  See id. ¶ 10.  Plaintiff was arrested and charged with attempted burglary, destruction of property and felony threats.  See id. ¶ 11.  Plaintiff alleges that he was taken to the Third District police station where he was detained for an extended period of time without

receiving proper medical attention.  <u>See</u> <u>id</u>.  The criminal charges against plaintiff subsequently

were dismissed because the building and the property that were the subjects of the attempted

burglary and destruction of property actually belonged to the plaintiff.  <u>See</u> <u>id</u>. ¶ 12.

        Plaintiff filed a complaint in this Court on August 3, 2005.  Plaintiff has alleged:

(1) Fourth Amendment violations, (2) denial of procedural and substantive due process,

(3) conspiracy to violate civil rights, (4) failure to train, supervise and control, (5) intentional

infliction of emotional distress, (6) assault and battery, (7) negligent infliction of emotional

distress, (8) false arrest, (9) false imprisonment, and (10) negligence and gross negligence.

        Plaintiff attempted to serve Officer Grajales and Officer Hector in their individual

and official capacities on September 8, 2005 and September 9, 2005, respectively.  <u>See</u>

Memorandum of Points and Authorities in Support of Defendant District of Columbia's Motion

to Dismiss ("D.C. Mot. to Dism."), Attachment 5 at 2, 4; D.C. Mot. to Dism., Attachment 6 at

2, 4.  The Returns of Service aver that both officers were served personally at the Third District

police station.  <u>See</u> D.C. Mot. to Dism., Attachment 5 at 2, 4; D. C. Memo., Attachment 6 at 2, 4.

After plaintiff filed the Returns of Service, however, counsel for the District of Columbia

informed plaintiff's lawyer that Officer Grajales and Officer Hector no longer were employed by

the Metropolitan Police Department when service was attempted.  <u>See</u> Memorandum of Points

and Authorities in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's

Complaint ("Pl.'s Opp.") at 4.  Consequently, on February 2, 2006, plaintiff made a second

attempt to effect personal service on Officer Hector at 18245 Smoke House Court, in

Germantown, Maryland.  <u>See</u> Return of Service on Anthony Hector.

On February 15, 2006, plaintiff filed a motion for extension of time to serve Officer Grajales. The Court granted plaintiff's motion on February 22, but stated that if plaintiff failed to effect service and file proof of service by April 18, 2006, the Court would dismiss the complaint against Officer Grajales under Rule 4(m) of the Federal Rules of Civil Procedure. See Minute Order (February 22, 2006).

Plaintiff attempted to serve Officer Grajales on April 15, 2006 at the home of his father in Austin, Texas. See Return of Service on Oscar Grajales; Affidavit of Oscar Stefan Grajales ¶ 5. Officer Grajales, however, does not reside in Texas, and his father informed the process server that Officer Grajales did not live with him and actually resided in New England. See Affidavit of Oscar Stefan Grajales ¶¶ 3, 6. Nevertheless, the process server left the summons and complaint with Officer Grajales' father, and filed a return of service indicating service of the summons and complaint on Officer Grajales' father in Austin. Id.; Return of Service on Oscar Grajales at 2. On April 26, 2006, Officer Grajales filed a motion to dismiss for insufficient service of process. See Defendant Oscar Grajales' Motion to Dismiss ("Grajales Mot. to Dism.") at 1.

With respect to the District of Columbia, plaintiff attempted to serve the Mayor of the District of Columbia and the Attorney General for the District of Columbia by certified mail on September 12, 2005. See D.C. Mot. to Dism., Attachment 4 at 1, 4. The summons and complaint were addressed to the Mayor at "1350 Pennsylvania Avenue, NW, Washington, DC 20004" and to the Attorney General at "1350 Pennsylvania Avenue, NW, Ste. 409, Washington, DC 20004." Id. In both instances, the summons and complaint were signed for upon receipt by "M. Smith." Id. at 3, 6.

4

On December 5, 2005, the District of Columbia filed a motion to dismiss for insufficient service of process on the grounds that neither the Mayor nor the Attorney General had designated M. Smith to receive service of process on their behalf, and pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See D.C. Mot. to Dism. at 5-7, 9. Officer Hector joined the District of Columbia's motion to dismiss on February 26, 2006. See Praecipe at 1. Plaintiff subsequently attempted to re-serve the Mayor and the Attorney General. See Pl.'s Opp. at 6-7. The Returns of Service indicate that on January 3, 2006 Gladys Herring received service on behalf of the Mayor and Gale Rivers received service on behalf of the Attorney General. See Return of Service on the Mayor; Return of Service on the Attorney General.

## II.  SERVICE OF PROCESS

Both Officer Grajales and the District of Columbia (joined by Officer Hector) have filed motions to dismiss for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. Service of process upon "individuals within a judicial district of the United States" is governed by Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e)(2) states that service upon an individual may be effected

> by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e)(2). Rule 4(e)(1) also permits service to be effected according to the "law of the state in which the district court is located, or in which service is effected." FED. R. CIV. P.

4(e)(1). The Civil Rules of the Superior Court of the District of Columbia establish, in pertinent part, service requirements parallel to those contained in Rule 4(e)(2) of the Federal Rules of Civil Procedure. See D.C. SUPER. CT. CIV. R. 4(e)(2). Rule 4(c) of the D.C. Superior Court Civil Rules also permits service to be effected upon an individual by certified or registered mail. See D.C. SUPER. CT. CIV. R. 4(c)(3). The Maryland Rules of Civil Procedure, applicable only to the February 2, 2006 service of process on Officer Hector, similarly authorize service to be effected personally, by leaving the appropriate papers at the defendant's "dwelling house or usual place of abode," or by certified mail. MD. RULE 2-121(a). Finally, the Texas Rules of Civil Procedure, applicable only to the April 15, 2006 attempted service on Officer Grajales, provide that service can be effected

> by delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record, as the case may be, either in person or by agent or by courier receipted delivery or by certified or registered mail, to the party's last known address, or by telephonic document transfer to the recipient's current telecopier number, or by such other manner as the court in its discretion may direct.

TEX. R. CIV. P. 21(a).

Rule 4(m) of the Federal Rules of Civil Procedure places a time limit on service of process. It states that:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

*A. Service on Officer Grajales*

Officer Grajales argues that plaintiff failed to serve him personally at the Third District station on September 8, 2005 and that the April 15, 2006 service on Officer Grajales' father, rather than on Officer Grajales himself, at a location other than Officer Grajales' place of residence, failed to comport with any applicable rules. See Defendant Oscar Grajales' Memorandum in Support of His Motion to Dismiss ("Grajales Memo.") at 1-3.[1] Officer Grajales argues that plaintiff's attempted service on April 15, 2006 was improper because it did not conform to any of the methods of service permitted by Rule 4(e) of the Federal Rules of Civil Procedure. Grajales Memo at 2-4. The return of service states unequivocally that plaintiff did not serve Officer Grajales personally, but rather his father. See Return of Service on Oscar Grajales at 2. Officer Grajales states in his affidavit that he never appointed his father as his agent to accept service of process, and there is no evidence to suggest otherwise. See Affidavit of Oscar Stefan Grajales ¶ 7. Finally, Officer Grajales does not reside with his father, or even in the same state, and Officer Grajales' father informed plaintiff's process server of this fact. See id. ¶¶ 3, 5.

The Court concludes that Officer Grajales has not received proper service of process. This Court has already granted plaintiff an extension of time to serve Officer Grajales, allowing him approximately 240 days from the filing of the complaint to effect service, instead of the 120 days provided by Rule 4(m) of the Federal Rules of Civil Procedure. See Minute Order

---

[1] Plaintiff does not dispute that the September 8, 2005 and September 9, 2005 attempts to serve process on Officer Grajales and Officer Hector, respectively, at the Third District station were invalid.

7

(February 22, 2006).  When the Court granted plaintiff's motion for extension of time, it stated

that if plaintiff failed to effect proper service on Officer Grajales by April 18, 2006 plaintiff's

complaint would be dismissed.  See id.  Plaintiff has had ample time to effect proper service on

Officer Grajales, but has failed to do so, or to show good cause for a further extension of time.

The Court therefore will grant Officer Grajales' motion to dismiss for insufficient service of

process.

### B.  Service on Officer Hector

By serving him at his home in Germantown, Maryland, on February 2, 2006,

plaintiff effected proper service on Officer Hector approximately 180 days after filing the

complaint, but before Officer Hector joined the District of Columbia's motion to dismiss by

Praecipe on February 26, 2006.  The question, then, is whether good cause exists to extend the

usual 120-day deadline for service under Rule 4(m) of the Federal Rules of Civil Procedure.  The

Court has broad discretion under Rule 4(m) to extend the time for service.  See FED. R. CIV. P. 4

advisory committee's note, 1993 Amendments, subdiv. (m) (Rule 4(m) "authorizes the court to

relieve a plaintiff of the consequences of an application of this subdivision even if there is no

good cause shown.").  In light of the District of Columbia's two motions for extension of time to

file an answer or otherwise respond, which once granted resulted in the first responsive pleading

being filed after the 120 days for service had elapsed, and in order to reach the merits of the case,

the Court retroactively will extend plaintiff's time for service on Officer Hector and deem the

February 2, 2006 service sufficient under Rule 4(e) and (m) of the Federal Rules of Civil

Procedure.  Officer Hector's motion to dismiss for improper service therefore will be denied.

*C.  Service on the District of Columbia*

The District of Columbia maintains that service on the District of Columbia was improper because plaintiff failed to serve the agents specifically designated to receive service of process on behalf of the Mayor and the Attorney General.  See D.C. Mot. to Dism. at 6-8.  Rule 4(j)(2) of the Federal Rules of Civil Procedure states that service "upon a state, municipal corporation, or other governmental organization" shall be effected by delivering a copy of the summons and the complaint to the chief executive officer [here, the Mayor of the District of Columbia], or "by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant."  FED. R. CIV. P. 4(j)(2).  Rule 4(j)(1) of the District of Columbia Superior Court Civil Rules prescribes the method for effecting service of process on the District of Columbia:

> Service shall be made upon the District of Columbia by delivering . . . or mailing (pursuant to paragraph (c)(3)) a copy of the summons, complaint and initial order to the Mayor of the District of Columbia (or designee) and the Corporation Counsel [now the Attorney General] of the District of Columbia (or designee).  The Mayor and the Corporation Counsel may each designate an employee for receipt of service of process by filing written notice with the Clerk of the [Superior] Court.

D.C. SUPER. CT. CIV. R. 4(j)(1).  Paragraph (c)(3) states that service may be effected "by mailing a copy of the summons, complaint and initial order to the person to be served by registered or certified mail, return receipt requested."  D.C. SUPER. CT. CIV. R. 4(c)(3).

The Mayor has designated the Secretary of the District of Columbia as his agent for receipt of legal correspondence including summonses and complaints.  See Mayor's Order 2004-77 at 1 (May 14, 2004).  In addition, the Mayor has ordered that:

9

> The Secretary shall designate from time to time, by office order, one or more personnel to handle the receipt of legal correspondence addressed to the Mayor. The personnel so designated shall receive legal correspondence either from the person effecting service upon the Secretary, from the Unit, or from any other originating or transmitting source, as the case may be.

Id.[2]

Service of process on the District of Columbia by mail is valid only if the mail is signed for by an employee who is specifically designated to receive service of process. See Eldridge v. District of Columbia, 866 A.2d 786, 787-88 (D.C. 2004); Byrd v. District of Columbia, 230 F.R.D. 56, 58-59 (D.D.C. 2005). In Eldridge, a case factually similar to this one with respect to service of process, the District of Columbia Court of Appeals stated:

> Although the complaint was mailed to the Office of the Mayor and the Office of the Corporation Counsel and signed for by employees in those respective offices, they were not, however, signed for and received by the specific employees designated to receive service of process. This court, therefore, concludes that [plaintiff] did not effect proper service of process upon the Mayor or the Corporation Counsel in accordance with the strictures of Super. Ct. Civ. R. 4(j)(1).

Eldridge v. District of Columbia, 866 A.2d at 787; see also Byrd v. District of Columbia, 230 F.R.D. at 58-59 (quoting Eldridge, 866 A.2d at 787).

In the case at bar, plaintiff mailed the summons and complaint to the Mayor and Attorney General by certified mail to the correct addresses on September 12, 2005. See D.C.

---

[2]    The Secretary of the District of Columbia has designated Tabatha Braxton and Gladys Herring as the employees authorized to receive legal correspondence on behalf of the Mayor. D.C. Mot. to Dism., Attachment 1 (Memorandum from Interim Secretary of the District of Columbia) (November 9, 2005) at 1. The Attorney General has designated Darlene Fields, Tonia Robinson and Gale Rivers as the employees authorized to receive legal correspondence on behalf of the Attorney General. D.C. Mot. to Dism., Attachment 2 (Attorney General Office Order 2005-19) (June 6, 2005) at 1.

Mot. to Dism., Attachment 4 at 1, 4.  In both instances, the mail was received and signed for by

M. Smith.  See id. at 3, 6.  Under the Attorney General's Office Order 2005-19 issued on June 6,

2005, M. Smith was not designated to receive legal correspondence.  Plaintiff's attempted service

on the Attorney General is therefore was improper under Eldridge and Byrd.[3]

Plaintiff again attempted to serve the Mayor and the Attorney General on

January 3, 2006, this time successfully, by personally serving Gladys Herring and Gale Rivers,

the designated agents of the Mayor and the Attorney General, respectively.  See Return of

Service on Gladys Herring at 1; Return of Service on Gale Rivers at 1; see also note 2 supra.

Therefore, the District of Columbia now has been properly served.

Although service was not properly effected on the District of Columbia until

approximately 150 days after the filing of the complaint, good cause exists to extend the 120-day

deadline set forth in Rule 4(m) of the Federal Rules of Civil Procedure.  Plaintiff's service by

mail was not received by the proper employee in the Mayor's and Attorney General's offices, but

it otherwise conformed to the requirements of Rule 4(j)(2) of the Federal Rules of Civil

Procedure and Rules 4(j)(1) and 4(c)(3) of the District of Columbia Superior Court Civil Rules.

Not only does plaintiff have little control over which employee in an office happens to sign for

the mail when it arrives, but there is nothing in Rule 4 of the Superior Court rules or in the

---

[3]      As of November 9, 2005, M. Smith also was not designated to receive legal correspondence on behalf of the Mayor.  Neither party, however, has provided evidence of who was designated to receive service of process on behalf of the Mayor on September 12, 2005 when plaintiff's summons and complaint were received.  Nevertheless, because plaintiff's service on the Attorney General was improper, plaintiff's service did not meet the requirements for service on the District of Columbia under Rule 4(j)(1) of the District of Columbia Superior Court Civil Rules, which requires both the Mayor and the Attorney General (formerly the Corporation Counsel) to be served with process.

Mayor's Orders to warn plaintiffs that service will be invalid if someone other than the Secretary

or her specific designee does happen to sign for a letter containing legal correspondence.  See

Byrd v. District of Columbia, 230 F.R.D. at 60.  To the contrary, Mayor's Order 2004-77 states

that the Secretary's designees "*shall* receive legal correspondence either from the person

effecting service upon the Secretary, from the Unit, or from any other originating or transmitting

source, as the case may be."  Mayor's Order 2004-77 at 1 (May 14, 2004) (emphasis added).

This language suggests that the Secretary and her employees have the responsibility of ensuring

that the correct individual receives service of process.  Plaintiff therefore acted reasonably in

assuming that his first attempt to serve process on the Mayor and the Attorney General was

proper.  Furthermore, if this Court were to dismiss plaintiff's complaint for insufficient service of

process, plaintiff would be barred from re-filing his lawsuit by the statute of limitations.  The

Court therefore finds good cause to extend plaintiff's time for service pursuant to Rule 4(m) of

the Federal Rules of Civil Procedure and deems the service effected by plaintiff on January 3,

2006 to be sufficient under Rule 4(e).

### III.  PLAINTIFF'S SUBSTANTIVE CLAIMS

*A. Standard of Review*

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal

Rules of Civil Procedure may not be granted unless it appears beyond doubt that the plaintiff can

prove no set of facts that supports his claim entitling him to relief.  See Conley v. Gibson, 355

U.S. 41, 45-46 (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).

The Court generally may not look outside the facts contained within the four corners of the

complaint.  See Gordon v. National Youth Work Alliance, 675 F.2d 356, 361 (D.C. Cir. 1982).

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept the factual

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

See Razzoli v. Fed. Bureau of Prisons, 230 F.3d 371, 374 (D.C. Cir. 2000); Taylor v. FDIC, 132

F.3d 753, 761 (D.C. Cir. 1997); Harris v. Ladner, 127 F.3d 1121, 1123 (D.C. Cir. 1997).  While

the complaint is to be construed liberally in considering a motion to dismiss for failure to state a

claim, the Court need not accept inferences drawn by the plaintiff if those inferences are

unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal

conclusions.  See Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### B.  Intentional Tort Claims -- Statute of Limitations

The District of Columbia, joined by Officer Hector, argues that Count VI (assault

and battery), Count VIII (false arrest) and Count IX (false imprisonment) are barred by the statute

of limitations and therefore should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure.  See D.C. Mot. to Dism. at 10.  The District of Columbia Code expressly

provides a one-year limitations period for claims involving "libel, slander, assault, battery,

mayhem, wounding, malicious prosecution, [or] false arrest or imprisonment."  D.C. Code § 12-

301(4).  The incident from which plaintiff's claims arose occurred on August 4, 2002.  See Am.

Compl. ¶ 9.  Plaintiff did not file his initial complaint until August 3, 2005, almost three years

later.  Plaintiff offers no arguments against the application of the one-year statute of limitations

to these three counts.  Counts VI, VIII and IX therefore are barred by the statute of limitations

and shall be dismissed.

The District of Columbia further argues that the one-year statute of limitations also applies to Count V (intentional infliction of emotional distress). See D.C. Mot. to Dism. at 10-11. The District of Columbia Court of Appeals has stated that "in certain cases where intentional infliction of emotional distress was included among a number of alleged torts, the one-year statute of limitation has been applied where the nature of the action rested on the other torts and the emotional distress aspect of the claim was essentially an outgrowth of the other pleaded torts." Saunders v. Nemati, 580 A.2d 660, 662 (D.C. 1990). The court in Saunders went on to hold, however, that "an independent action for intentional infliction of emotional distress, not intertwined with any of the causes of action for which a period of limitation is specifically provided in the other provisions of section 12-301, is governed by the general residuary three-year limitation of section 12-301(8)." Id. at 665 (emphasis added).

In Hunter v. District of Columbia, 943 F.2d 69, 72 (D.C. Cir. 1991), the District of Columbia Circuit applied Saunders in holding that the one-year statute of limitations governs an intentional infliction of emotional distress that was intertwined with a claim of assault and battery. The plaintiff in Hunter alleged excessive force by the police and sued the District of Columbia and two Metropolitan Police Department officers for constitutional claims and common law claims for assault and battery, intentional infliction of emotional distress, and negligent hiring and training. See id. at 71. The court concluded that the plaintiff's complaint did not allege any facts suggesting that his emotional distress was caused by "conduct independent of the alleged assault and battery" and therefore held that the one-year statute of limitations barred plaintiff's claim for intentional infliction of emotional distress. Id. at 72.

14

Plaintiff here has failed to allege any facts to suggest that his emotional distress was caused by conduct independent of the alleged assault and battery, false arrest and false imprisonment, all of which have a one-year statute of limitations.  Count V, which in the amended complaint follows the factual allegations pertaining to the alleged assault and battery, false arrest and false imprisonment claims, states only that "[t]he acts and conduct hereinbefore [sic] and after described constitute intentional infliction of severe emotional distress."  Am. Compl. ¶¶ 9-11, 35.  Under Hunter, the one-year statute of limitations therefore applies to plaintiff's claim for intentional infliction of emotional distress, and the Court therefore must dismiss Count V as time-barred.

### C.  Negligence Claims

In addition to his claim for assault and battery, plaintiff has filed claims for negligent infliction of emotional distress in Count VII, and negligence and gross negligence in Count X.  See Am. Compl. ¶¶ 42-44, 56-60.  Defendants argue that plaintiff cannot maintain a common law negligence claim against them as plaintiff is merely presenting his assault and battery claim under a different name.  See D.C. Mot. to Dism. at 11-14.  Counts VII and X allege that the "acts and conduct hereinbefore [sic] and after described constitute negligent infliction of severe emotional distress" and also "constitute breach of duty owed to plaintiff."  Am. Compl. ¶¶ 43, 57.  Plaintiff alleges that he "was illegally seized without a warrant and deprived of the rights, privileges and immunities guaranteed to Plaintiff, [sic] beaten, assaulted and battered resulting in severe bodily injuries." Id. ¶ 58.

The Court is "not bound by plaintiff's characterization of the action," and should examine the complaint to determine which causes of action are actually stated.  Maddox v. Bano, 422 A.2d 763, 765 (D.C. 1980); see also Kivanc v. Ramsey, 407 F. Supp. 2d 270, 277 (D.D.C. 2006).  First and foremost, "it is impossible to negligently commit assault and/or battery as the states of mind are separate and incompatible."  District of Columbia v. Chinn, 839 A.2d 701, 708 (D.C. 2003); see Kivanc v. Ramsey, 407 F. Supp. 2d at 277 ("'[T]here is no such thing as a negligent battery,' nor a negligent assault.") (quoting DOBBS, LAW OF TORTS § 26 at 51 (2001)). The District of Columbia Court of Appeals requires that when a negligence claim involves use of excessive force by a police officer, the "negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care."  District of Columbia v. Chinn, 839 A.2d at 705, 711.

Plaintiff has failed to allege negligence claims that are separate and distinct from his intentional tort claims.  Instead of pleading that the defendants committed a negligent act, plaintiff simply alleges that he was attacked, beaten, and detained by defendants without provocation.  Invoking words such as "duty," "breach" and "negligent," as plaintiff did in Counts VII and X, does not transform an intentional tort into negligence.  The Court therefore grants the defendants' motion to dismiss Counts VII and X for failure to state a claim.

### D.  Conspiracy Between Police Officers: 42 U.S.C § 1985(3)

Count III alleges that the defendant police officers conspired to deprive plaintiff "of right [*sic*] guaranteed to him under the Fourth and Fourteenth Amendments to the

Constitution of the United States by the excessive use of force."  Am. Compl. ¶ 21.  The District

of Columbia maintains that plaintiff's conspiracy claim, apparently brought under 42 U.S.C.

§ 1985(3),  must be dismissed because plaintiff has failed to identify two parties that are legally

capable of engaging in a conspiracy with each other.  See D.C. Mot. to Dism. at 15.[4]  Defendants

appear to invoke the intracorporate conspiracy doctrine, arguing that "[t]he District and its

employees acting within the scope of their employment comprise a single entity, incapable of

entering into a conspiracy."  Id.  This doctrine states that "a corporation cannot conspire with its

employees, and its employees, when acting within the scope of their employment, cannot

conspire among themselves."  McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036-37

(11th Cir. 2000).  It is based on the notion that a corporation and its agents constitute a single

legal entity that cannot conspire with itself, just as it is impossible for an individual person to

conspire with himself.  See Dickerson v. Alachua County Comm., 200 F.3d 761, 767 (11th Cir.

2000).

        The Circuits are split as to whether the intracorporate conspiracy doctrine applies

to civil rights claims brought under 42 U.S.C. § 1985.  Seven Circuits have held that the doctrine

applies to Section 1985 claims.  See Dickerson v. Alachua County Comm., 200 F.3d at 767;

Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994); Hull v. Cuyahoga Valley Joint Vocational

Sch. Dist. Bd. of Educ., 926 F.2d 505, 509-510 (6th Cir. 1991); Buschi v. Kirven, 775 F.2d 1240,

1253 (4th Cir. 1985); Herrmann v. Moore, 576 F.2d 453, 459 (2nd Cir. 1978); Baker v. Stuart

Broadcasting Co., 505 F.2d 181, 183 (8th Cir. 1974); Dombrowski v. Dowling, 459 F.2d 190

---

[4]        The complaint does not specify a definition of conspiracy or a particular statute
that is implicated in the claim.

(7th Cir. 1972).  Three Circuits have held that the doctrine does not apply in this context.  See Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126-1127 (10th Cir. 1994) (intracorporate conspiracy doctrine was developed in the antitrust context "to allow one corporation to take actions that two corporations could not agree to do, [and] should not be construed to permit the same corporation and its employees to engage in civil rights violations."); Stathos v. Bowden, 728 F.2d 15, 21 (1st Cir. 1984) (intracorporate conspiracy doctrine "should [not] extend -- if at all -- beyond the ministerial acts of several executives needed to carry out a single discretionary decision."); Novotny v. Great Am. Fed. Savings & Loan Assoc., 584 F.2d 1235, 1258 (3rd Cir. 1978), vacated on other grounds, 442 U.S. 366 (1979).  The District of Columbia Circuit and the Ninth Circuit have not ruled on the issue.

Federal district courts in the District of Columbia, however, consistently have applied the intracorporate conspiracy doctrine to Section 1985.  See, e.g., Brown v. Sim, Civil No. 03-2655, 2005 U.S. Dist. LEXIS 35415 at *10-11 (D.D.C. Sept. 30, 2005); Lerner v. District of Columbia, 362 F. Supp. 2d 149, 165 (D.D.C. 2005) (intracorporate conspiracy doctrine did not apply because all of the alleged participants in the conspiracy were not employed by the same entity); Anyaibe v. Gilbert Sec. Serv., Civil No. 94-2377, 1995 U.S. Dist. LEXIS 21312 at *25 n.13 (D.D.C. May 16, 1995); Michelin v. Jenkins, 704 F. Supp. 1, 4 (D.D.C. 1989); Gladden v. Barry, 558 F. Supp. 676, 679 (D.D.C. 1983).[5]

---

[5]    In Kivanc v. Ramsey, 407 F. Supp. 2d 270 (D.D.C. 2006), the undersigned declined "to adopt a categorical policy that it is legally impossible for one police officer to conspire with another to deprive an individual of his rights under Section 1983."  Id. at 276.  The Court based its reasoning on the existence of evidence that the defendant police officers in Kivanc had falsified police reports, which conduct is not within the scope of routine police department decision-making.  See id.  No such evidence, or even allegations to that effect, exist here.

18

Plaintiff has failed to allege that the defendant police officers in this case were acting outside the scope of their employment and has further failed to offer any argument as to why the intracorporate conspiracy doctrine should not apply.  Plaintiff therefore has failed adequately to allege the existence of a conspiracy and Count III therefore shall be dismissed for failure to state a claim under 42 U.S.C. § 1985.  See Brown v. Sim, 2005 U.S. Dist. LEXIS 35415 at *11.

### E.  Violation of Procedural and Substantive Due Process

The District of Columbia argues that plaintiff's procedural and substantive due process claim (Count II) should be dismissed because the Fifth Amendment does not apply where another part of the Constitution provides explicit protection to the plaintiff.  See D.C. Mot. to Dism. at 14-15.[6]  The United States Supreme Court has held that:

> *all* claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original); see Albright v. Oliver, 510 U.S. 266, 273 (1994).  Plaintiff's claim arises from an assault and battery, which plaintiff alleges involved use of excessive force, followed by an arrest.  Plaintiff has alleged Fourth Amendment

---

[6]    Plaintiff can bring a due process claim only under the Fifth Amendment because the Fourteenth Amendment does not apply to the District of Columbia.  See Bolling v. Sharpe, 347 U.S. 497 (1954).

violations in Count I and that Amendment clearly applies. Therefore, the Court must analyze

plaintiff's substantive claims using a Fourth Amendment framework, not under the rubric of

substantive due process. Plaintiff therefore has failed to state a substantive due process claim in

Count II.

Graham and Albright, however, only involved substantive due process claims.

Indeed, the Court in Albright explicitly stated that the plaintiff had not made any procedural due

process claims. See Albright v. Oliver, 510 U.S. at 271. Furthermore, at least one court in this

district specifically has held Graham not to apply to procedural due process claims. See Qutb v.

Ramsey, 285 F. Supp. 2d 33, 42 (D.D.C. 2003). Nevertheless, this Court will dismiss plaintiff's

procedural due process claim in Count II for failure to state a claim because plaintiff has failed to

state a claim for violation of his Fifth Amendment right to procedural due process. Plaintiff has

not alleged any procedural rights that he was entitled to but did not receive. Nor has he alleged

any procedural deficiencies that he suffered in the course of his arrest or in its aftermath. "[A]

procedural due process claim requires the plaintiff to identify the process that is due." Doe v.

District of Columbia, 93 F.3d 861, 870 (D.C. Cir. 1996). Count II, alleging denials of both

procedural and substantive due process, therefore must be dismissed in its entirety.

### F.  Remaining Claims

The defendants have not moved to dismiss Count I (Fourth Amendment

violations) or Count IV (failure to train, supervise and control) for failure to state a claim, but

have only moved to dismiss those Counts for insufficient service of process pursuant to Rule

12(b)(5). As explained above, the Court has concluded that the District of Columbia and Officer

20

Hector have been properly served under Rule 4 of the Federal Rules of Civil Procedure. Counts I and IV therefore will not be dismissed as against them.

For the reasons stated above, the Court grants in part and denies in part defendant District of Columbia's motion to dismiss. The Court grants defendant Grajales' motion to dismiss. An Order consistent with this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   November 8, 2006