### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HOWARD TAFLER, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-1563 (PLF) |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants District of Columbia and Anthony Hector, by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 56, respectfully request that this Court grant summary judgment in their favor. As explained more fully in the accompanying Memorandum of Points and Authorities and Statement of Undisputed Material Facts, when construing the undisputed facts in the light most favorable to the Plaintiff, Plaintiff is unable to prove his claims of constitutional torts and failure to train, supervise and control. Thus, Defendants are entitled to judgment in their favor.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


   /s/  Nicole L. Lynch
NICOLE L. LYNCH (471953)
Chief, Section II

_____/s/  Shana L. Frost_____

SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 727-3625
shana.frost@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HOWARD TAFLER,            ) | |
|                       ) | |
|        Plaintiff,         ) | C.A. No. 05-1563 (PLF) |
|                       ) | |
|     v.                       ) | |
|                       ) | |
| DISTRICT OF COLUMBIA, *et al.*,    ) | |
|                       ) | |
|       Defendants.      ) | |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1.     On August 4, 2002, Jennifer Andrews, Plaintiff's live-in girlfriend, placed a 911 call reporting to the dispatcher that Plaintiff was breaking into her house and was yelling that he was going to kill her. Ex. 1 (Event Chronology); Ex. 2 (Decl. of Officer Carolyn Holland at ¶ 6).

2.     Ms. Andrews described Plaintiff by name, and indicated that Plaintiff was a white male, six feet tall, weighed 160 pounds, and was wearing a white shirt with black pants. Ex. 1; Ex. 2 at ¶ 6.

3.     Ms. Andrews also stated that Plaintiff was intoxicated on liquor and crack, was known to carry a knife, and was a "black belt." Ex. 1; Ex. 2 at ¶ 6.

4.     Officer Hector was dispatched to the location with the identifying information of the suspect from the dispatcher. Ex. 3 (Hector Dep. at 12-13).

5.     Officer Hector responded to the alley behind the residence and spotted Plaintiff in the alley behind the apartment building. *Id.* Plaintiff matched the description of the subject described by the dispatcher. *Id.; see also* Ex. 4 (Arrest/Prosecution Report).

6.     Officer Hector tackled Plaintiff from behind and knocked him to the ground with "extreme force." Ex. 6 (Pl.'s Resp. to Irog. No. 2). Plaintiff further claims he was "kneed to the back of [his] head and ribs once on the ground, handcuffed and kicked in [his] left side." *Id.*

7.     After his arrest, Plaintiff was taken to the Third District police station for processing. *Id.* Upon arrival at the station, the transporting officers were told to bring Plaintiff to the emergency room to be treated for the

lacerations to his face.  *Id.*  Plaintiff was then taken to Georgetown University Hospital where he was given stitches and released to the custody of the police.  *Id.; see also* Ex.5 (Tafler Dep. at 93-96).

8.      Plaintiff asserts that soon after his arrest he filed a complaint against Officer Hector with the Third District Station.  Ex. 5 at 148-152.


                        Respectfully submitted,

                        LINDA SINGER
                        Attorney General for the District of Columbia

                        GEORGE C. VALENTINE
                        Deputy Attorney General
                        Civil Litigation Division


                         /s/  Nicole L. Lynch
                        NICOLE L. LYNCH (471953)
                        Chief, Section II


                          /s/  Shana L. Frost
                        SHANA L. FROST (458021)
                        Assistant Attorney General
                        441 4th Street, NW, 6th Floor South
                        Washington, DC 20001
                        (202) 724-6534
                        Fax:  (202) 727-3625
                        shana.frost@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **HOWARD TAFLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **C.A. No. 05-1563 (PLF)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants District of Columbia (the "District") and former Metropolitan Police
Department ("MPD") Officer Anthony Hector, by and through their undersigned counsel,
respectfully request that the Court grant judgment in their favor. As demonstrated herein,
when considering the undisputed material facts in the light most favorable to Plaintiff, it
is clear that Plaintiff cannot prove his remaining claims of violation of constitutional
rights and failure to train, supervise and control. Thus, judgment in favor of the
Defendants is appropriate.

**I.    PROCEDURAL BACKGROUND**

Plaintiff filed the above-captioned matter on August 3, 2005 against the District,
Officer Hector and former MPD Officer Oscar Grajales. Plaintiff subsequently amended
his Complaint on October 19, 2005 to correct a typographical error regarding the date of
the incident forming the basis of his Complaint. In his Amended Complaint, Plaintiff set
forth claims of violation of the Fourth Amendment to the Constitution (Count I),
violation of procedural and substantive due process rights (Count II), conspiracy to

violate civil rights (Count III), failure to train, supervise and control (Count IV), intentional infliction of emotional distress (Count V), assault and battery (Count VI), negligent infliction of emotional distress (Count VII), false arrest (Count VIII), false imprisonment (Count IX), and negligence and gross negligence (Count X), arising from his arrest on August 4, 2002.

Defendants moved to dismiss on grounds of improper service, and for failure to state a claim upon which relief could be granted on all claims in the Amended Complaint except for Plaintiff's claims of violation of the Fourth Amendment (Count I) and Plaintiff's common law claim of failure to train, supervise and control (Count IV).  On November 9, 2006, this Court granted in part and denied in part Defendants' Motion, granting the dismissal of Mr. Grajales for improper service, dismissing all of Plaintiff's claims except for the claims of Fourth Amendment violations (Count I) and failure to train, supervise and control (Count IV), and denying the dismissal of Officer Hector on service grounds.[1]

## II.    FACTUAL BACKGROUND

The undisputed material facts that form the basis of Plaintiff's suit are as follows. On August 4, 2002, Jennifer Andrews, Plaintiff's live-in girlfriend, placed a 911 call reporting to the dispatcher that her boyfriend, Howard Tafler, was breaking into her house and was yelling that he was going to kill her.[2]  Ex. 1 (Event Chronology); Ex. 2 (Decl. of Officer Carolyn Holland at ¶ 6).  Ms. Andrews described Plaintiff by name, and

---

[1] Although the Court's dismissal of Mr. Grajales was without prejudice, Plaintiff never re-filed a lawsuit against him.

[2] The Event Chronology is a transcript of the Computer Assisted Dispatch which memorializes the information provided by the 911 caller.  Ex. 2 at ¶ 3.  The protocol is to broadcast the same information memorialized in the Event Chronology over the air, particularly as it provides information necessary to apprehend a suspect and/or to protect officer safety.  *See* Ex. 2 at ¶ 7.

indicated that Plaintiff was a white male, six feet tall, weighed 160 pounds, and was wearing a white shirt with black pants. Ex. 1; Ex. 2 at ¶ 6. Ms. Andrews also stated that Plaintiff was intoxicated on liquor and crack, was known to carry a knife, and was a "black belt." Ex. 1; Ex. 2 at ¶ 6.

Officer Hector was dispatched to the location with the identifying information from the dispatcher. Ex. 3 (Hector Dep. at 12-13). Officer Hector testified that he responded to the alley behind the residence and spotted Plaintiff in the alley behind the apartment building. *Id.* He further stated that Plaintiff matched the description of the subject described by the dispatcher. *Id.; see also* Ex. 4 (Arrest/Prosecution Report).

Plaintiff testified that when he arrived home from work he found his apartment empty. Ex. 5 (Tafler Dep. at 59); Ex. 6 (Pl.'s Resp. to Irog. No. 2).[3] He then left the apartment through the back door leading to the alley to go to the restaurant where his girlfriend worked. *Id.*[4] He avers that while walking through the alley he was tackled from behind and knocked to the ground with "extreme force" by an undercover officer later identified as Officer Hector. Ex. 6 (Pl.'s Resp. to Irog. No. 2). Plaintiff further claims he was "kneed to the back of [his] head and ribs once on the ground, handcuffed and kicked in [his] left side." *Id.*

After his arrest, Plaintiff was taken to the Third District police station for processing. *Id.* Upon arrival at the station, Plaintiff claims that the transporting officers

---

[3] In his answers to Defendants' Interrogatories, Plaintiff did not identify and quote the interrogatory immediate preceding his responses as required by LCvR 26.2(d). Thus, for the Court's reference, Defendants' original Interrogatories are appended hereto as Ex. 7.

[4] According to Plaintiff's deposition, he and his girlfriend, Ms. Andrews, apparently were in a dispute at the time over Plaintiff's belief that she was cheating on him, which was based on Plaintiff misdialing what he believed to be his home number and a man answering this phone. Ex. 5 at 34-38. In any event, this information is not relevant to the qualified immunity analysis as this information was not known to the police.

were told to bring Plaintiff to the emergency room to be treated for the lacerations to his

face. *Id.* Plaintiff was then taken to Georgetown University Hospital where he was given

stitches and released to the custody of the police that same day. *Id.; see also* Ex. 5 at 93-

96. The criminal charges against Plaintiff were later dismissed. Plaintiff asserts that

soon after his arrest he filed a complaint against Officer Hector with the Third District

Station. Ex. 5 at 148-152.[5]

### III.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary

judgment:

> [S]hall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact and that the
> movant is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). The moving party in a motion for summary judgment bears the

initial burden of identifying evidence that demonstrates that there is no genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once a movant has made the required showing under the rule, the burden shifts

to the opposing party to "come forward with specific facts showing that there is a

genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587,

(1986). In other words, "once the movant has supported a summary judgment motion by

evidence of particular events, the court may properly look to the nonmovant for rebuttal

evidence either from persons familiar with the events, or expect the nonmovant to

---

[5] During discovery, Plaintiff was unable to produce any evidence of filing this initial complaint with the
Third District against Officer Hector aside from his own testimony, and undersigned counsel has not been
able to locate any such complaint with MPD or in Officer Hector's personnel file, internal affairs division
file, or unit file. Ex. 5 at 148-154.

otherwise cast more than metaphysical doubt on the credibility of the testimony." *Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993).

A trial court should enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the party will bear the burden of proof at trial. *Celotex*, *supra*, 477 U.S. at 322. As demonstrated below, Plaintiff cannot make a sufficient evidentiary showing to prove his constitutional claim and claim of failure to supervise, train or control against the District or Officer Hector. Thus, judgment in favor of the Defendants is appropriate.

## IV.    ARGUMENT

### A.  The Undisputed Material Facts Demonstrate That Plaintiff Cannot Prove His Constitutional Tort Claim Against the District of Columbia

Plaintiff's constitutional tort claim alleges violations of the Fourth Amendment to the Constitution. *See* Am. Compl. ¶¶ 13-16; *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen must be analyzed under the Fourth Amendment and its 'reasonableness' standard."). As a preliminary matter, Defendants dispute that Anthony Hector's conduct, as alleged by the Plaintiff, rises to the level of a Fourth Amendment violation. This is discussed below in Section IV.B. In any event, even assuming that Plaintiff could state a claim for violation of his Fourth Amendment rights, Plaintiff has offered no evidence that could possibly demonstrate that the District of Columbia is liable for such a violation.

It is well-settled that "Congress did not intend municipalities to be held liable [for constitutional torts pursuant to § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Soc. Servs.*, 436

U.S. 658, 691 (1978) (rejecting liability for municipalities and municipal officials under *respondeat superior* theory).  To prove a Section 1983 claim that meets the *Monell* requirements, the Plaintiff must allege that the municipality adopted an unconstitutional policy, such as a statute or regulation, that violates the constitutional rights of the individual, *Id.* at 694, or a practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970).  A plaintiff may do so by establishing an unconstitutional decision or action taken by an official policymaker of the municipality.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).  To make such a showing, the Plaintiff must demonstrate the existence of an official decision maker with "final authority to establish municipal policy with respect to the action ordered."  *Id.* at 481.

A plaintiff may also attempt to prove his Section 1983 claim by demonstrating that the municipality failed to adequately train its employees.  To satisfy such a standard, a plaintiff must provide evidence that officials knew or should have known of a specific training need, that failure to address that need was likely to result in violation of individual constitutional rights, and that the officials were deliberately indifferent to the need for such training.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

During discovery, Defendants propounded interrogatories to Plaintiff asking Plaintiff to state the bases for his constitutional claims against the District.  Specifically, Defendants asked the following Interrogatories:

> 14.    Do you contend that your constitutional rights were violated as a result of the deliberate indifference on the part of policymakers in the District of Columbia and/or the Metropolitan Police Department to a pervasive custom or practice of violating citizens rights on the part of employees of the Metropolitan Police Department?  If the answer is yes:
> A.        Identify the policymaker(s).

6

B.      Describe the persistent and pervasive custom or practice.

C.      Identify and describe any and all incidents upon which you rely to support such allegations.

D.      Identify all witnesses who you contend support such a claim and summarize the information possessed by each witness that supports such a claim.

15.     Do you contend that your constitutional rights were violated as a result of the deliberate indifference on the part of the policymakers of the District of Columbia and/or the Metropolitan Police Department to a need for training and/or supervision of employees of the Metropolitan Police Department?  If the answer is yes:

A.      Identify the policymakers.

B.      Describe in detail the training you contend was necessary to avoid violations of the relevant constitutional right.

C.      Identify and describe all incidents upon which you will rely to support any contention that policymakers of the District of Columbia were deliberately indifferent to the need for training and that this lack of training and/or supervision resulted in constitutional violations.

D.      Identify all witnesses who you contend support such a claim and summarize the information possessed by each witness that supports such a claim.

16.     Identify any statutes, regulations and/or orders of the District of Columbia that you claim are evidence of an unconstitutional custom and/or policy on the part of the District of Columbia.

Ex. 7 (Defs.' Irogs 14-16).  Plaintiff responded to Interrogatory Number 14 as follows:

Objection.  Plaintiff objects to this Interrogatory to the extent that it is designed to propound four (4) Interrogatories in one, to circumvent the limitations set by the Court's scheduling Order, but without waiving this objection, the practice of Police Department not to discipline and adequately supervise its members as well as improper hiring procedure, inadequate training, and code of silence amongst its rank resulted in my injuries.  The police department consistently ignored evidence of misconduct by subordinate officers, and sanctioned and covered up the wrongdoing of officers.  Upon information and belief, Officer Hector had several prior incidents of use of excessive force, yet the District of Columbia failed to reprimand and sanction Officer Hector, which means that the conduct was sanctioned and condoned by the final policy maker in the Department.  The Police Department does not respond to citizens [sic] complaints and the system setup to investigate citizen's complaint consists of police officers that also engaged in the cover-up.  This is supported by the fact that the Police Department did not act on my complaint against

> Defendant Hector.  The officers' knowledge that they would be protected
> for any improper conduct by their fellow police officers and partner was
> the impetuous [sic] for their actions against me.

Ex. 6 (Pl.'s Resp. to Irog. No. 14).  Plaintiff's responses to Interrogatories 15 and 16

simply refer back to his answer to Interrogatory Number 14.

Faced with Plaintiff's incomplete and evasive responses to these Interrogatories,

Defendants wrote to Plaintiff asking him to fully respond to Defendants' questions.  *See*

Ex. 8 (April 17, 2007 Letter from S. Frost to J. Iweanoge).  Specifically, Defendants

noted that, in response to Interrogatories 14 and 15, Plaintiff did not identify the alleged

policymakers, did not identify and describe all incidents of misconduct upon which

Plaintiff intended to rely, and did not identify all witnesses that Plaintiff claimed could

support his allegations and a summary of the information each witness possessed.  *Id.* at

2.  Counsel for Defendants also noted that Plaintiff did not identify any statute, regulation

or order of the District of Columbia constituting evidence of an unconstitutional custom

or policy.  *Id.*

Plaintiff responded to Defendants' inquiry on May 21, 2007.  With respect to his

responses to Interrogatories 14 and 15, Plaintiff stated that he could not "fully respond to

[these] Interrogator[ies] at this time because Plaintiff has not received District of

Columbia's answer to Plaintiff's discovery requests and has not received any response to

the complaints he filed against Anthony Hector and Oscar Grajales."  Ex. 9 (Pl.'s Supp.

Resp. to Irogs 14 & 15).  Plaintiff further identified as the policymakers "Government of

the District of Columbia, Chief of Police, Head, Office of Police Complaints, Head, Civil

Rights and Force Investigation Section, Head, MPDC Office of Professional

responsibility, and Chain of command officials."  *Id.*  With respect to Interrogatory

Number 16, Plaintiff stated that he would "supplement this answer during the course of discovery and/or prior to trial." *Id.* (Supp. Resp. to Irog. 16). As of the close of discovery, Plaintiff has not produced any documents to support his constitutional claims or further supplemented his discovery responses in any way.

First, Plaintiff has not identified any statute, regulation or order that is evidence of an unconstitutional custom or policy of the District of Columbia. Second, Plaintiff can offer no evidence that the District of Columbia has a *de facto* custom or policy of violating the rights of citizens. To prove such a claim, Plaintiff must "show fault on the part of the city based on a course its policymakers consciously chose to pursue." *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997); (*citing Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986)). Plaintiff has no evidence to support such an assertion. Rather, Plaintiff theorizes, without factual support, that the District does not discipline or properly supervise its officers, and that it ignores and covers up evidence of misconduct. Ex. 6 (Pl.'s Resp. to Irog. 14). Plaintiff has offered no documents, testimony, or other evidence to prove these presumptions.

Moreover, without a showing of "an existing unconstitutional municipal policy . . . attributed to a municipal policymaker," "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 820 (1985). Here, Plaintiff only offers his own arrest and purported complaint against Officer Hector as proof of municipal liability, and names the entire District of Columbia government and all MPD supervisory officials as municipal policymakers. Ex. 6 (Pl.'s Resp. to Irog. 14); Ex. 9 (Pl.'s Supp. Resp. to Irog 14). Plaintiff has not offered any evidence to show the existence of an unconstitutional

municipal policy attributed to any particular policymaker. Thus, Plaintiff cannot establish municipal liability for alleged constitutional violations based upon an unconstitutional custom or practice.

It is also clear that Plaintiff cannot rest his municipal liability claim on deliberate indifference to a need to train. In order to do so, Plaintiff must show that city officials were so deliberately indifferent to a need to train so obvious that the failure to train in itself became a municipal policy. *City of Canton,* 489 U.S. at 389-90. Thus, Plaintiff must produce evidence to show that officers "so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers." *Id.* at 390 n.10. Moreover, Plaintiff must prove that the deliberate indifference to the need to train actually caused the constitutional injury in question. *City of Oklahoma*, 471 U.S. at 823. Plaintiff's burden in this respect is significant; he must show that "*deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell*, 436 U.S. at 694; emphasis in original). "A showing of simple or even heightened negligence will not suffice" to establish municipal liability for constitutional torts. *Brown*, 520 U.S. at 407.

Here, the undisputed material facts demonstrate that the record is devoid of any showing that the District fails to adequately train its officers, or that such a failure to train was the moving force behind Plaintiff's deprivation of rights. The only evidence Plaintiff has offered is his own testimony regarding the alleged misconduct surrounding his own arrest and the complaint he purportedly filed relating to that arrest. The record is also devoid of any evidence – beyond mere speculation – that the District sanctioned or

covered up police misconduct in any way. As Plaintiff has produced no evidence to support his claim, he cannot show that the District violated his Fourth Amendment rights, and judgment in favor of the District on Plaintiff's constitutional claim is appropriate.

### B. The Undisputed Material Facts Demonstrate That Plaintiff Cannot Prove His Claim of Deprivation of Constitutional Rights Against Anthony Hector

The undisputed material facts demonstrate that Plaintiff cannot prove that Officer Hector violated Plaintiff's Fourth Amendment rights. First, the facts, when taken in the light most favorable to Plaintiff, demonstrate that Officer Hector's actions during Plaintiff's arrest do not rise to the level of a constitutional violation. Moreover, even if Plaintiff could prove a Fourth Amendment violation, Officer Hector is entitled to qualified immunity.

"When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Brosseau v. Haugen,* 543 U.S. 194 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Supreme Court has recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396, citing *Terry* v. *Ohio*, 392 U.S. 1, 22-27 (1968). Thus, to determine whether an officer has violated a right protected by the Fourth Amendment, courts will apply a standard of objective reasonableness in light of the facts and circumstances confronting the officer. *Graham*, 490 U.S. at 396; *Saucier*, 533 U.S. at 202.

To make the inquiry of the "'reasonableness' of a particular use of force" the Court must judge the officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, citing *Terry,* 392 U.S. at 20-22. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Here, Officer Hector responded to a call of domestic violence where the complaining witness, Ms. Andrews, reported to the dispatcher that Plaintiff had threatened to kill her, that Plaintiff was high on alcohol and crack, that Plaintiff was known to carry a knife and was a "black belt." Defs.' Stmt. at ¶ 1-3. Ms. Andrews gave a physical description of Plaintiff and told the dispatcher that the Plaintiff was attempting to break into her house as she was making the 911 call. *Id.* Thus, it would appear to a reasonable officer that the officer was faced with a serious complaint of domestic violence, that Plaintiff was in the process of committing a violent felony (breaking and entering with the intent to kill), that the Plaintiff could pose a greater physical threat than the average person (a reported propensity to carry a deadly weapon and highly trained in martial arts), and that the Plaintiff was operating under impaired judgment (reportedly high on alcohol and crack).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97. Here, Officer Hector acted as a

reasonable officer would, and should act – when spotting a suspect of a violent felony in progress, Officer Hector tackled Plaintiff from behind and knocked him to the ground. Officer Hector did not wait for Plaintiff to escalate the situation by pulling out the knife that Plaintiff was reported as carrying, nor did Officer Hector wait for Plaintiff to engage in the martial arts in which Plaintiff was purportedly highly trained.  Indeed, the fact that Plaintiff was reported to be high on crack and alcohol at the time made it all the more likely that Plaintiff could behave in a dangerous and irrational manner when confronted by the officer.  Had Officer Hector provided the Plaintiff with the opportunity to escalate the threat, Officer Hector would have created a situation which would have required a greater use of force than that used by Officer Hector.  Instead, Officer Hector used the minimal amount of force necessary – tackling the Plaintiff, knocking him to the ground, kneeing him in his head and ribs, kicking his left side and handcuffing him – to control Plaintiff and to stop the threat he reasonably believed Plaintiff posed.

Indeed, Plaintiff suffered only minor injuries from Officer Hector's use of force: lacerations to his lip and chin.  The fact that Plaintiff was treated and released that same day further demonstrates that the use of force to stop a potentially dangerous individual from the commission of a felony was objectively reasonable.  The Supreme Court has recognized that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973)).  Here, when considering the threat posed by Plaintiff, the officers actions were objectively reasonable and no Fourth Amendment violation occurred.

## C.  Anthony Hector Is Entitled to Qualified Immunity

Generally, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.  However, even if the Court were to find that Plaintiff could produce evidence to show that Officer Hector violated Plaintiff's Fourth Amendment rights, Officer Hector would be entitled to qualified immunity as his actions were not clearly unlawful at the time.

In determining whether a right was clearly established at the time of a particular incident, the Court must examine the claimed right "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  Thus, the right alleged to be violated "must have been 'clearly established' in a more particularized, and hence more relevant sense:  The contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  Indeed, "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 206.  "If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau,* 543 U.S. at 198.

Courts in this jurisdiction have granted police officers qualified immunity in cases where the claimed use of force was similar, if not greater than, the use of force presented here.  In *Scott v. District of Columbia,* 101 F.3d 748 (D.C. Cir. 1996), the Circuit Court upheld the district court's finding of qualified immunity for officers who "slammed" Scott to the ground, causing him to "hit the ground on his back" after Scott had attempted

to leave the police vehicle in which he was being transported. *Scott,* 101 F.3d at 759.

The officers "roll[ed] him over, putting their knees on his neck, back, and lower legs, . . .

handcuffed him and 'dragged' him to a police transport vehicle." *Id.* The court

determined that qualified immunity was justified as the officers had a reasonable belief

that Scott, who happened to be a fellow police officer, was under arrest and was

attempting to escape. *Id.* The court further noted that "[t]he fact that Scott offered to

return to the police cruiser did not eliminate the need for force." *Id.*

Similarly, in *Martin v. Malhoyt*, 830 F.2d 237 (D.C. Cir. 1987), the Circuit Court

upheld a finding a qualified immunity where the plaintiff, a limousine driver, alleged that

the officer "brutally grabbed" him around the waist during a traffic stop while the

plaintiff was attempting to provide the officer his license and registration as the officer

requested, threw him into the driver's seat, and slammed the car door on the plaintiff's

leg. *Martin*, 830 F.2d at 240, 262. The plaintiff further alleged that the officer later

grabbed his arms, pulled them behind his back and placed him in handcuffs while

pushing him up against the limousine. *Id.* at 262. In assessing these facts, the Court

concluded:

> Tested by the standard confirmed in [*Tennessee v.*] *Garner*, [471 U.S. 1
> (1985)] we are unable to characterize the *manner* in which Malhoyt
> arrested Martin as objectively unreasonable in light of the rapidly
> unfolding sequence of events. Slamming the car door on Martin's leg
> causes us to pause, for that action appears malicious. But under *Garner's*
> objective test, maliciousness is irrelevant. We must focus on whether
> Malhoyt's total conduct, objectively appraised, added up to a reasonable
> mode of arrest. We conclude that it did.

*Martin*, 830 F.2d at 262 (emphasis in original).

Finally, in *Wardlaw v. Pickett*, 1 F.3d 1297 (D.C. Cir. 1993), the Circuit Court

found a deputy marshal's actions of punching the plaintiff – who rushed towards the

15

marshals while they were physically removing the plaintiff's friend from the courtroom - in the jaw once and in the chest two to three times objectively reasonable. *Wardlaw*, 101 F.3d at 1303-04. In that case, the marshals had been informed of anticipated demonstrations and were in a narrow stairwell when the plaintiff ran towards them yelling at them not to hurt his friend.

In light of the line of cases discussed above, it is clear that Officer Hector's actions were not so excessive that no reasonable officer would have believed that they were lawful. Officer Hector took reasonable action to stop what he reasonably believed was a felony in progress by tackling the plaintiff from behind, kneeing him in the back of his head and ribs, and kicking him once. Defs.' Stmt. at ¶ 6.

### D. As a Matter of Law, Plaintiff Cannot Prove His Claim of Failure to Train, Supervise and Control

#### 1. Plaintiff Has Proffered No Evidence to Support a Claim of Failure to Train, Supervise, and Control

Plaintiff's cause of action for failure to supervise, train or control Anthony Hector is essentially one for negligent hiring, training or supervision. Plaintiff asserts that the District "had a duty to train, supervise, and control subordinates." Am. Compl. ¶ 27. Plaintiff further asserts that the District "knowingly, willfully, or recklessly failed to train, supervise, or control subordinates who may have a history of misbehavior." *Id.* Plaintiff also alleges that the District "knew or should have known that [its] police officers were inadequately trained, supervised, and controlled to perform the duties of their respective positions." *Id.* ¶ 33. At this juncture, it is clear that Plaintiff cannot proffer any evidence that the District was negligent in its supervision, training or control of its officers.

"Potential recovery in tort for negligent hiring or retention of an employee is not based on respondeat superior, but rather on proof of negligence on the part of the employer himself." *Schechter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 431 (D.C. 2006), citing *Fleming v. Bonfin*, 80 A.2d 915, 917 (D.C. 1951). "To establish a cause of action for negligent supervision, a plaintiff must show: that the employer 'knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.'" *Phelan v. City of Mt. Ranier*, 805 A.2d 930, 937-38 (D.C. 2002), quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985).

In their Interrogatories to Plaintiff, Defendants asked Plaintiff to:

> Describe in detail the basis of your claim that the District of Columbia negligently hired, trained and supervised Metropolitan Police Department officers, including but not limited to, the names of the Metropolitan Police Department officers that the District of Columbia failed to properly hire, train and supervise, the evidence to support the claim that the District of Columbia negligently hired, trained and supervised police officers and the witnesses you intend to call to support this claim and the substance of their likely testimony.

Ex. 7 (Defs.' Irog. No. 6). Defendants also asked Plaintiff to attach any documents in support of his answer.

Plaintiff responded as follows:

> I do not believe that the officers involved followed proper protocol/procedure in apprehending me and denying me proper medical treatment. I was also falsely charged, falsely imprisoned, and my rights were further violated when they later stopped and interrogated me for the purpose of making threats to my person and to my safety. Anthony Hector and Oscar Grajales in addition to other police officers involved in the incident. Plaintiff relies on the pleadings of this case and the court records and court file for this action. Plaintiff also reserves the right to supplement this answer as soon as additional information is received.

Ex. 6 (Pl.'s Resp. to Irog. No. 6). Plaintiff did not produce any documents in support of his beliefs, nor did he supplement his response to this Interrogatory.

It is clear that Plaintiff has nothing to offer this Court regarding the supervision and training of the MPD officers beyond mere speculation. Plaintiff has not identified any procedures that he contends the officers violated. More importantly, even if Plaintiff could identify such violations on the part of the officers, Plaintiff cannot demonstrate that MPD knew or should have known its officers had behaved in a dangerous or otherwise incompetent manner, and then failed to adequately supervise the officers. *Phelan*, 805 A.2d at 937-38, *Giles*, 487 A.2d at 613. Thus, the District of Columbia is entitled to judgment on Plaintiff's claim of failure to train, supervise and control.

## 2. Plaintiff Has Failed to Name an Expert to Testify to the Applicable Standard of Care for Failure to Train, Supervise and Control

As stated, Plaintiff's claim of "failure to train, supervise and control" is essentially a claim for negligent training and supervision. This claim must fail, however, because Plaintiff has failed to proffer an expert to testify to these matters.

In order to prevail in any type of negligence claim, a plaintiff must establish the applicable standard of care, a deviation of that standard of care by the defendant, and that the defendant's deviation from the standard of care caused the plaintiff's injuries. *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988). In this case, Plaintiff must offer an expert to testify as to the standard of care because "[e]xpert testimony [is] required to prove the standard of care where it concerns a subject so related to some profession or occupation as to be beyond the realm of knowledge of an average lay person." *Young v.*

*District of Columbia,* 752 A.2d 138 (D.C. 2000), citing *District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C. 1995).

      In cases alleging negligent police operations, supervision or training, courts have required expert testimony regarding the standard of care.  *See, e.g. Griggs v. WMATA*, 2002 U.S. Dist. LEXIS 18413 at *13-*14 (D.D.C. Sept. 30, 2002) (Urbina, J.), citing *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987) (requiring expert testimony for training of police regarding confrontation with people under the influence of narcotics); *District of Columbia v. White*, 442 A.2d 159, 164-65 (D.C. 1982) (requiring expert testimony concerning adequacy of the MPD's weapons safety training); *Holder v. District of Columbia*, 700 A.2d 738, 741-42 (D.C. 1997) (stating that police use of force is an issue beyond the ken of the average juror); *see also Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79, 89-90 (D.D.C. 2000) (absent expert testimony regarding the standards of police training, the jury "would be forced to engage in idle speculation regarding the duty of care governing . . . the District of Columbia in the training of their employees, and such speculation on the part of a jury is not permissible.") (internal quotations and citations omitted).

      In this case, Plaintiff must provide expert testimony to establish the standard of care for the training, supervision and control of police officers.  Plaintiff has failed to name an expert and submit an expert report, as required by Fed. R. Civ. P. 26(a)(2)(B). Ex. 10 (Pl.'s 26(a)(2)(B) Statement).  Thus, Defendants are entitled to summary judgment on Plaintiff's claim of failure to train, supervise or control.

## V.     CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court enter judgment in their favor on Plaintiff's remaining claims in this lawsuit of violation of Fourth Amendment rights (Count I) and failure to supervise, train or control (Count IV).

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


   /s/  Nicole L. Lynch
NICOLE L. LYNCH (471953)
Chief, Section II

   /s/  Shana L. Frost
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 727-3625
shana.frost@dc.gov