UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| **HOWARD TAFLER** )<br>    Plaintiff,  )<br>  )<br>    v.   )<br>  )<br>**THE DISTRICT OF COLUMBIA, et al** )<br>    Defendant(s)  ) | Civil Action No: 05CV01563 (PLF) |

************************************

### PLAINTIFF'S OPPOSITON TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, Howard Tafler (hereinafter referred to as Plaintiff), by and through his attorneys Jude C. Iweanoge and THE IWEANOGES' FIRM, PC hereby moves this Honorable Court to deny Defendants' motion for summary judgment. As established in the accompanying supporting memorandum, Defendant has failed to establish that there exist no triable issues of material fact and that Defendant is entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

WHEREFORE, Plaintiff prays this Honorable Court to deny Defendants' motion for summary judgment.

Respectfully submitted,
THE IWEANOGES' FIRM, PC

By: __/s/JudeIweanoge/s/_____
Jude C. Iweanoge, Bar #493241
1026 Monroe Street, NE
Washington, D.C. 20017
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: jci@iweanogesfirm.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
Civil Division

| | |
|---|---|
| **HOWARD TAFLER** ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | **Civil Action No: 05CV01563 (PLF)** |
| ) | |
| **THE DISTRICT OF COLUMBIA, et al** ) | |
|     Defendant(s) ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORTS OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**STATEMENT OF MATERIAL FACTS IN DISPUTE**

1.    On August 4, 2002, Plaintiff while walking in the back alley of the residence he shared with Jennifer Andrews, he was tackled from behind by an individual later identified as Defendant Anthony Hector who was dressed in plain clothes and driving an unmarked crown Victoria. (Exhibit 3 (Hector's Dep. at 26; 38)

2.    Defendant Hector did not disclose his identity while trying to arrest Howard Tafler or ask Mr. Tafler to stop that he was a police officer prior to Defendant Hector violently tackling him from behind and knocking him to the ground. Exhibit 1 (Tafler's Dep. at 66; 70-71; 77).

3.    Howard Tafler was not aware that Jennifer Andrews had called the police and was not aware that the Crown Victoria packed behind the alley as he was walking away from the rear of his apartment was a police vehicle and as such could not be fleeing from Defendant Hector. Exhibit 1 (Tafler's Dep. at 66; 90).

4.     Howard Tafler was tackled and laying on the ground and posed no threat or danger to the officer to warrant Defendant Hector kneeing the back of his head and ribs and kicking his side while he was handcuffed. Exhibit 2 (Pl.'s Resp. to Irog. No. 2).

5.     Howard Tafler was injured following the violent tackle from behind and the kicking while he was on the ground causing him to visibly bleed but Defendant Hector did not pay attention to his injuries or provide him any medical assistance until after Howard Tafler was transported to the police district. Exhibit 3 (Hector's Dep. at 21; 40; 45); Exhibit 1 (Tafler's Dep. at 78; 94-102).

6.     Defendant Hector's supervisors condoned his conducts and despite the complaints against him by Plaintiff and other individuals were vouching for his good character and excellent police work to avoid his termination from the police force even after his egregious conduct that led to his termination. Exhibit 8 at 11- 13.

## ARGUMENT
### STANDARD OF REVIEW

A court may dispose of a case on summary judgment before trial only where the pleadings, stipulations, affidavits, and admissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, only after adequate time for discovery against a party who fails to make a showing that is sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Joyce v. United States, 795 F. Supp. 1, 3 (D.D.C. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317). The standard test for summary judgment is "whether a fair minded jury could return a verdict for the [nonmovant] on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Shields v. Eli Lilly and Co., 895 F.2d 1463 (D.C. Cir. 1990). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255; Washington Post Co. v. U.S. Dept. of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). In addition, the court may not make credibility determinations or weigh the evidence. Lytle v. Household Mfg., Inc, 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990).

The party moving for summary judgment bears the burden of proving lack of any genuine issue of fact, and the court must view the available facts in the light most favorable to the non-moving party. Minihan v. American Pharmaceutical Ass'n, 812 F.2d 726, 727 (D.C. Cir. 1987). The nonmoving party is "required to provide evidence that would permit a reasonable jury to find" in her favor. Laninham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). Nevertheless, the Supreme Court in Anderson, stated "credibility determination, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions not those of a judge." 477 U.S. at 255. Notwithstanding that the Court must view the record as a whole it must disregard all evidence favorable to the moving party that the jury is not required to believe. The court is only required to give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontroverted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. at 300; See also Zuchel v. Spinharney, 890 F.2d 273 (10th Cir. 1989)(although the defendant presented the testimony of

nine eyewitnesses tending to vindicate defendant's conduct, the court affirmed the denial of defendant's motion for summary judgment stating that "it made no difference that defendant's view of the evidence is supported by the majority of the witnesses.").

## DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED

A motion for summary judgment by a municipality would be denied if the plaintiff: (1) identifies the specific policy or custom, (2) fairly attribute the policy and fault for its creation to the municipality, and (c) find the necessary affirmative link between the identified policy or custom and the specific violation. Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987). Deficient training is a matter of "policy" and the casual link is shown by proving a specific deficiency rather than general laxness or ineffectiveness in training and that the deficiency makes the occurrence of specific violation a reasonable probability rather than a mere possibility. Id.

In order to state a claim under 42 U.S.C. § 1983, "plaintiff must allege violation of a right secured by the constitution and laws of the United States" by someone "acting under the color of state law." West v. Atkins, 487 U.S. 42 (1988). A municipality may be held liable under 42 U.S.C § 1983 "when execution of a government's policy or custom … inflicts [an] injury. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). There are limited circumstances, in which allegation of "failure to train" can be the basis for municipal liability under section 1983 because "not only unconstitutional policies are actionable under the statute." City of Canton v. Harris, 489 U.S. 378 (1989). Inadequacy of training may serve as basis for section 1983 municipal liability claim only where the "failure to train amounts to deliberate indifference to rights of persons with whom police came into contact." Id. In addition, the Supreme Court and this Circuit have held that "a city's inaction, including its failure to train or

5

supervise its employees adequately constitutes a 'policy or custom' under Monell when it can be said that the failure amounts to 'deliberate indifference' towards the constitutional rights of persons in its domain." City of Canton, 489 U.S. at 388-89 (recognizing municipal liability under section 1983 for failure to train adequately); Triplett v. District of Columbia, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (noting that "inaction giving rise to or endorsing a custom" can be a basis of section 1983 liability); Rogala v. District of Columbia, 161 F.3d 44, 56 (D.C. Cir. 1998) (recognizing liability for failure to train or supervise).

In Triplett, the court relying on Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989), recognized that "the only acts that count though they may include inaction giving rise to or endorsing a custom are ones by a person or persons who have final policymaking authority under state law." Triplett, 108 F.3d at 1453. In the instant case, plaintiff alleges that he filed a citizen's complaint against Defendant Hector and the Metropolitan Police Department failed to conduct an investigation, which suggests that at least a policymaker endorsed Defendant Hector's actions.

Furthermore, a municipality can be liable under 42 U.S.C. § 1983 in this Circuit, "when execution of a government's policy or custom … inflicts [an] injury." Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). According to the Supreme Court, "a failure to train in the use of excessive force can itself be a policy for purposes of section 1983 liability." See City of Canton v. Harris, 489 U.S. 378, 387 (1989).

In Atchinson v. District of Columbia, 73 F.3d 418, 423 (D.C. Cir. 1996), the court was faced with whether or not to dismiss plaintiff's complaint because it alleged only one incident of misconduct. The District of Columbia Circuit Court, in determining whether a single incident of misconduct will suffice, relied on City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

The court determined that "section 1983 does not require a plaintiff to prove multiple instances of misconduct if the plaintiff can prove any unconstitutional municipal policy responsible for a single instance of misconduct." Atchinson, at 423.

The District argues that plaintiff's own arrest and purported complaint against Officer Hector as proof of municipal liability is not sufficient to impose liability under Monell. However, a plaintiff in a section 1983 claim is not required to allege more than one incident of misconduct. Here, the plaintiff has stated that Defendant Hector used excessive and unnecessary force in his arrest and that he was injured by Defendant Hector and was not provided any medical assistance until he was transported to the police district for booking despite his obvious injuries and bleeding. Ex. 1 (Tafler's Dep. at 78); Ex. 2 (Hector's Dep. at 45). Subsequently. Plaintiff filed citizens compliant against Defendant Hector which was never investigated. Ex. 1 (Tafler's Dep. at 148-49). Plaintiff also states that Defendant confronted him on another occasion after the August 4, 2002 incident and threatened to do bodily harm to him. Ex. 1 (Tafler's Dep. at 141-47).

As discussed below, Plaintiff's arrest was accomplished by the use of excessive force by Defendant Hector in dealing with a domestic affair.

In this case, the liability of the District is based on a combination of specific policy and custom of the District of Columbia Metropolitan Police Department and deliberate indifference to the right of its citizens. The Police Department has a policy of nonsupervision of police officers and cover-up that amounted to a deliberate indifference to the use by those officers of excessive force. The circumstances of Plaintiff's arrest shows that Defendant Hector used excessive force on Plaintiff in violently tackling him from behind kneeing him on his neck and rib cage and kicking him on his side while in handcuffs, yet the police department failed to

investigate the allegations in Plaintiff's complaint contrary to its general order that required full investigation into any physical injury to an arrestee. (See Exhibit 6: GO-RAR-901.07¶VI). Defendant Hector was required to complete a use of force incident report for the use of excessive force and resultant injury to the Plaintiff yet he failed to file a report and was not compelled by his supervisor to file a use of force report. Defendant Hector and Officer Grajales were aware of the use of physical force on Plaintiff and the Force Investigation Team (FIT) of the police department was also aware that Defendant Hector used excessive force yet no report was generated nor report filed. Infact the Sergeant and/or Commanding Officer at the Third District was aware that Plaintiff was injured and told Defendant Hector that he was not allowed to bring Plaintiff in for booking with injuries, yet no inquiry was made regarding the excessive use of force that caused the injury to Plaintiff. Ex. 1 (Tafler's Dep. at 78).

     A complaint was filed against Defendant Hector regarding an alleged excessive use of force incident that occurred on or about March 24, 2002. Ex. 7. However, the allegation of use of excessive force was not sustained because the complainant did not cooperate with the investigation. Despite the fact that the complainant in that case did not cooperate with the investigation, "when a supervisor should know of such propensity but does not, some courts have held that he has the duty to ascertain the truth about his personnel, even though there may be significant barriers to obtaining the information. See e.g. Orpiano v. Johnson, 632 F.2d 1096 (4th Cir. 1980), *cert denied*, 450 U.S. 929, (1981). Similarly, after the March 24, 2002 incident alleging excessive use of force, Plaintiff was brought into the police District with serious injuries and no inquiry was made by the Sergeant regarding the circumanstance that led to the injury but only requested that the Defendant transport Plaintiff to the hospital. The Metropolitan Department was put on notice by the March incident and should have taken reasonably step to

investigate Plaintiff's complaint filed against Defendant Hector for misconduct and excessive use of force. The Police Department did not investigate the excessive use of force by the police officer meaning that they condoned the action of the Defendant Hector.

On or about January 26, 2003, Defendant was also involved in another misconduct including but not limited to excessive use of force for which no action was taken by the police force until April 27, 2005 more than 2 years after the misconduct was reported. Exhibit 8. Moreover, during the hearing for the violations by Defendant Hector, his immediate supervisor Sergeant Pablo Fiqueroa testified that he had been Defendant Hector's supervisor since 1999 and stated "[h]is performance as a police officer is one who needs minimal supervision who always came through with his assignments. He never had any negative experience with him incurring the public." Exhibit 8 at 12. However, Defendant Hector's supervisor was aware at the time of his testimony that Defendant Hector had other disciplinary action that stemmed from Defendant Hector's contact. The fact that his immediate supervisor stated that he needed minimal supervision and that he never had a negative experience with the public shows that the metropolitan police department acquiesced to his known constitutional violations by trying to conceal the information during his investigation. Additionally, Defendant Hector's direct supervisor also testified and stated that "[h]e was an excellent officer who never caused any problems who in four years he did not have to discipline." Defendant Hector's captain in his testimony during the hearing for disciplinary action against Defendant Hector, when asked if there was anything Defendant Hector could be charged with that would make him appropriate for termination. He replied "genocide for example." Exhibit 8 at 12. This also shows that the policy makers at the Metropolitan Police department turned a blind side to the conduct of Defendant Hector despite allegations such as the one from March 2002 that he had a propensity to use

excessive force or engage in other misconducts such as the conduct from on or about October 12, 2002. These loquacious testimonies by Defendant Hector's supervisors clearly exhibit their inaction or deliberate indifference on the part of the municipality.

District of Columbia's response to complaints of use of excessive force by Metropolitan Police officers was uninterested and superficial. It is reasonable to infer that the aforestated facts reflect indifference by the City to the use of excessive force.

The second factor is satisfied because the custom of failure to investigate, reprimand and supervise resulted in Plaintiff's injury. In Sledd v. Linsday, 102 F.3d 232 (7th Cir. 1996), the court held that the plaintiff stated a *Monell* , where he specifically alleged that the city police maintained a code of silence, that disciplinary complaints almost never result in official censure and that this practice hurt him in particular by making the officers believe their actions would never be scrutinized. Similarly, the City did not conduct any investigation of prior federal or state civil rights violations nor did the City sanction or reprimand the officers. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

Municipal liability exists where the responsible policy-maker has actual or constructive knowledge of the unlawful acts and through intentional misconduct or deliberate indifference fails to correct or stop such practices. See Spell v. McDaniel, 824 F.2d 1380. In this case, the policy makers adopted the policy not to supervise and reprimand and had constructive knowledge of the aforestated custom by officers but failed to stop it due to deliberate indifference. Moreover, Municipal liability may be ascribed from the first specific violation that results from proven policy, while fault for a violation resulting from a condoned custom can only result when a pattern of comparable practices has become actually or constructively known to policy makers. Id.

The aforestated facts taken together justify Plaintiff's allegation of municipal liability and thus Defendant is not entitled to summary judgment on Plaintiff's constitutional tort claim.

## DEFENDANT POLICE OFFICER IS NOT ENTITLED TO SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY AS TO PLAINTIFF'S CLAIMS

The defendant police officer is not entitled to qualified immunity because the plaintiff was violently tackled from the back without any warning to stop causing him to hit his face on the ground and sustaining injuries. Ex. 1 (Tafler's Dep. at 66; 70-71). In addition, while Plaintiff was on the ground with his injuries and bleeding, the officer pushed his knee to the back of Plaintiff's head and handcuffed and kicked Plaintiff on his side. Ex. 2 (Pl.'s Resp. to Irog. No. 2). At this time Plaintiff posed no danger to Defendant and was already injured. Ex. 1 (Tafler's Dep. at 66; 70-71; 94-102). Moreover, despite the fact that Plaintiff was injured and bleeding, Defendant did not provide medical assistance to Plaintiff but failed to pay attention to his injuries. Ex. 3 (Hector's Dep. at 16-17; 21).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered for the moving party when there is no genuine issue of material fact. As such, there is a material issue as to whether the plaintiff was intentional tackled from behind without any warning to stop and beaten while he had already been restrained and posed no danger to the officer. Moreover, the Defendant's version of events contradicts each other. Defendant Hector stated during his deposition that Plaintiff was running and tripped just as he caught up with him. Ex. 3 (Hector's Dep. at 13-15; 27). However, in his incident report, he states that Plaintiff was walking at fast pace and did not mention anything about Plaintiff running or tripping in the alley. Ex. 4 and 5. See Taylor v. Farmer et al, 13 F.3d 117 (1993)(The court placed emphasis on the contradictory accounts of witnesses in denying motion for summary judgment based on qualified

immunity); Kelley v. LaForce, 288 F.3d 1, 7 n.2 (1st Cir. 2002) ("the first Circuit has consistently supported the principle of requiring the court to defer to the fact finder for the resolution of any "factual dispute underlying the qualified immunity defense.")

Government employees performing discretionary functions are generally immune from liability insofar as their conduct does not violate "clearly established statutory or constitutional right of which reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 815, 818 (1982); Davis v. Scheres, 468 U.S. 183 (1984). The test requires three determinations: (1) the specific right allegedly violated; (2) whether the right was so clearly established as to alert a reasonable governmental official to its constitutional parameters and (3) whether a reasonable official could have believed that the conduct was lawful." Durso v. Taylor 624 A.2d 449, 454 (D.C. app. 1993)(citing Gooden v. Howard County, 917 F.2d 1355, 1360-61 (4th Cir. 1990).

Applying this test, defendant's claim of immunity should fail because the facts of this case clearly point to the violation of plaintiff's constitutional rights that was unreasonable. The defendants used excessive force in violation of plaintiff's Fourth Amendment right. In view of the fact that the right is sufficiently clear and that every officer knows that use of excessive force violates a clearly established constitutional right, the defendant is not entitled to qualified immunity. The plaintiff was kicked on the side when he was lying on the ground after being violently tackled and hand cuffed by Defendant Hector. In addition, every reasonable officer knows that using excessive force-that is kicking a wounded defenseless person- after the person poses no threat or danger is excessive and unreasonable.

Whether a reasonable officer could have believed that the force alleged was objectively reasonable depends on the proportionality of the force in light of all the circumstances. See

<u>Rowland v. Perry</u>, 41 F.3d 167 (4th Cir. 1994). The reasonableness of the officers' conduct depends both on whether the officers were in danger at the precise moment they used force and whether the plaintiff's conduct at that moment created the need to use the force. See <u>Sevier v. City of Lawrence</u>, 60 F.3d 695 (10th Cir. 1995). In this case, the officer was not in danger at the time the excessive force was used and the plaintiff did not engage in any conduct that required the use of excessive force at that moment especially in light of the fact that he was never asked to stop and the officer was driving an unmarked car and dressed in plain clothes.

Furthermore, the Officers also violated District of Columbia police policy and regulations concerning the use of force and did not use the standard of care required of police officers in the exercise of their duties. District of Columbia General Order of the Metropolitan Police Department RAR 901.7 on use of force provides in pertinent part that:

> …All members who encounter a situation where the possibility of violence or resistance to lawful arrest is present should, if possible, diffuse the situation through advice, warning and verbal persuasion.

RAR 901.7 (v)(B)

However, in this case, the officer used excessive force when the use of force was not necessary. Defendant Hector was dressed in street clothes in an unmarked police vehicle. (Ex. 3 (Hector's Dep. at 26; 38). Defendant Hector did not announce himself or warn Plaintiff to stop despite the fact that he was dressed in plain clothes and driving an unmarked car but instead violently tackled Plaintiff from behind. Ex. 1 (Tafler's Dep. at 60; 77). Moreover, by kicking Plaintiff while on the ground and handcuffed, Defendant's act constitute use of force indicating potential criminal conduct as defined in General Order 901.7(II)(E), which states "Use of force indicating potential criminal conduct by a member

includes but is not limited to, all strikes, blows, kicks or other similar uses of force against a handcuffed subject . . . ".

Under the facts of this case, it is not reasonable for Defendant Hector to assume that Plaintiff was fleeing the scene necessitating the violent tackle because Plaintiff was not aware that police was called to the scene and Defendant Hector did not have any reason to flee from a crown Victoria driven by a man in plain clothes behind his apartment. Ex. 1. (Tafler's Dep. at 66; 90). Moreover, Plaintiff was never asked to stop and never appeared to be resisting arrest. Yet Defendant Hector violently tackled him from behind knocking him to the ground and subsequently kicking him while in handcuffs. Moreover, in Defendant Hector's arrest report, he never made mention that Plaintiff was running in an attempt to flee the scene or that Plaintiff was resisting arrest. Ex. 4 and 5. Additionally, Defendant Hector brought Plaintiff to the police district despite his obvious injuries until he was asked to send him to the hospital for treatment. Ex. 3 (Hector's Dep. at 21; 40; 45); Ex. 1 (Tafler's Dep. at 78; 94-102). The inconsistency of the incident statements given by the officer is even sufficient to create factual dispute that would deprive the officer of summary judgment based on qualified immunity.

The court evaluates the following factors in determining officer's claim of qualified immunity: (1) the severity of the crime at issue, (2) the immediate threat to the safety of the officers or others and (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight. See Graham v. Connor, 490 U.S. 386, 397 (1989). An evaluation of these factors clearly demonstrate that the force used was not objectively reasonable and thus deprives the police officers of the defense of qualified immunity since all relevant factors are considered rather than anyone in isolation. The evidence regarding each of the Graham v. Connor factors

must be viewed in the light most favorable to plaintiff on summary judgment and when these factors are viewed in the light most favorable to Mr. Tafler, the officer would not be entitled to summary judgment.

The defense of qualified immunity is not decided on summary judgment when it depends on resolving factual disputes as to what took place. See Rainey v. Conerly, 973 F.2d 321 (4th Cir. 1992). Moreover, summary judgment is improper where, if the jury believes the plaintiff's version of the incident, the force used by the defendant in stopping Plaintiff would violate a clearly established law. In Kane v. Harris, 987 F.2d 1005 (4th Cir. 1993)[1], the Court held that the officers were not entitled to summary judgment based on qualified immunity for excessive force because to resolve the issue of qualified immunity the Court would have to determine which version of facts is true in order to determine if the officers actions were reasonable. In this case, the versions of the event as presented by the defendant are not consistent and different from the facts presented by the plaintiff, therefore to resolve the factual dispute that may entitle him to qualified immunity requires the jury to determine which version is true. The practice of granting summary judgment where there are factual dispute and conflicting versions has been greatly discouraged by the various circuits that have touched the issue. The "court[s] function is not to resolve any issue of material fact but only to ascertain whether any such issue exists, and all doubts in that regard must be resolved against summary judgment." Bouchard v. Washington, 514 F.2d 824, 827 (D.C. Cir. 1975). According to Defendant's conflicting version of events it is clear that Defendant Hector did not announce that he was the police neither did he ask Plaintiff

---

[1] The plaintiff, Ms. Kane, a 100 pound woman resisted arrest and used profanity and was subsequently convicted in State Court for resisting arrest. She filed a §1983 action for excessive force against the police officer and the trial court granted summary judgment based on qualified immunity. The Court of Appeals for the Fourth Circuit held that the officer was not entitled to qualified immunity.

to stop prior to violently tackling him from the back and subsequently kicking him while handcuffed. Ex. 2; Exhibit 4 and 5. Moreover, it is reasonable to assume that that Defendant Hector's version of event alleging that Plaintiff tripped and fell while running from Defendant Hector is incorrect because in his incident report he stated "I ran and stopped D-1 at the mouth of the alley," which corroborates Plaintiff's version that he violently tacked him from the back. Ex. 4 and 5.

The question, therefore, is whether violently tackling the plaintiff from behind and kicking him while in handcuffs as after he was lying helplessly on the ground manifests excessive and unreasonable force especially when the force was not necessary to stop or restrain him. The answer to the question is "yes." The defendants should not be entitled to qualified immunity since a person making a lawful arrest may be liable if that person uses excessive force. See Safeway Stores, Inc. v. Kelly, 448 A.2d at 863; see Jackson v. District of Columbia, 412 A.2d 948, 956 (D.C.1980). For example, in Parker v. Grand Hyatt Hotel, 124 F. Supp. 2d 79 (D.D.C. 2000), the court had to decide whether defendant officials were entitled to a motion for summary judgment on Parker's false arrest claim under 42 U.S.C. § 1983, where the officers claimed qualified immunity because they had probable cause to arrest Parker. The trial court determined that to establish qualified immunity, the police had to first demonstrate that they had probable cause to arrest the plaintiff. Id. at 91 (citing Saidi v. Washington Metro Area Transit Auth., 928 F. supp. 21, 27 (D.D.C. 1996). After determining that defendants had to demonstrate that they had probable cause to arrest the plaintiff, the court further determined that evidence presented to the court revealed that the time at which Parker became disorderly was in dispute because the defendants' claim that Parker was loud and belligerent prior to being dropped on the

ground was contradicted by the plaintiffs claim that it was only after being dropped that he used profanity and raised his voice. As a result, the court denied defendants' motion for summary judgment because there was a material factual dispute and reasonable fact finders could differ as to whether probable cause existed for Parker's arrest.

Defendant Hector argues that he used the minimal amount of force necessary by tackling the plaintiff, knocking him to the ground, kneeing him in his head and ribs, kicking his left side and handcuffing him. However, this argument is without merit in that Plaintiff did not pose any threat or danger to the Officer since he was never given an opportunity to exhibit any signs or actions to warrant a reasonable fear of danger to Defendant Hector.

Therefore the court should deny defendants' motion for summary judgment because defendant Hector is not entitled to qualified immunity.

    Respectfully submitted,
    THE IWEANOGES' FIRM P.C.


By:_____/s/_____
    Jude C. Iweanoge
    Iweanoge Law Center
    1026 Monroe Street, NE
    Washington, DC 20017
    Phone: (202) 347-7026
    Fax: (202) 347-7108
    Email: jci@iweanogesfirm.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 14th September 2007 a copy of the foregoing document was filed via electronic case filing system of the United States District Court for the District of Columbia and accordingly, that the Court will notify the Defendants through the court's e-file system.

                                                           /s/
                                           Jude C. Iweanoge