**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
Civil Division

| | |
|---|---|
| **HOWARD TAFLER** ( | |
| ( | |
| Plaintiff, ( | |
| ( | |
| v. ( | Civil Action No: 05CV01563 |
| ( | JUDGE: Paul L. Friedman |
| **THE DISTRICT OF COLUMBIA**, et al ( | |
| ( | |
| Defendant(s) ( | |
| ****************************** | |

**PLAINTIFF'S ANSWER TO INTERROGATORIES**

To:   DISTRICT OF COLUMBIA AND ANTHONY HECTOR
      c/o Shana L. Frost, Esquire
      Assistant Attorney General
      441 4th Street, NW, 6th Floor South
      Washington, MD 20001

From:  Howard Tafler
       c/o Jude C. Iweanoge, Esquire
       THE IWEANOGES FIRM, P.C.
       1026 Monroe Street
       Washington D.C. 20017

The Plaintiff, Howard Tafler, by his attorneys, Jude C. Iweanoge, Esquire, and THE IWEANOGES' FIRM, P.C. hereby answers the Interrogatories propounded upon him by the Defendants, and states as follows:

a.   The information contained in these Answers is being provided in accordance with the provisions and intent of the Federal Rules of Civil Procedure. Accordingly, the party answering these Interrogatories, by providing the information requested, does not waive objections to its admissions into evidence on grounds of materiality or relevancy or other proper grounds for objection.

Interrogatories to the extent applicable.

1. Plaintiff sets forth herein below certain general objections which are applicable to many or all of the interrogatories. Although Plaintiff will specifically object to each particular interrogatory as may be appropriate, the following general objections are set forth to preserve applicable objections. Each and every general objection stated herein-below is a continuing objection, which Plaintiff incorporates into each and every one of its answers to the

## GENERAL OBJECTION

therefore violate the Scheduling Order in the instant action.

f. The party answering these Interrogatories, through counsel, generally objects to these Interrogatories because, as framed, they number more than twenty-five (25) and

e. The party answering the Interrogatories, through counsel, generally objects to the instructions and definitions included in the Interrogatories to the extent that they purport to impose any greater burden or obligation on the executing party beyond that which is provided in the Federal Rules of Civil Procedure.

d. Discovery in this proceeding continues and the party answering these Interrogatories reserves the right to supplement and/or amend the information contained herein when and where appropriate.

c. The word usage and sentence structure may be that of the attorney assisting in the preparation of these Answers and thus does not necessarily purport to be the exact language of the executing party.

b. The information supplied in these Answers to interrogatories is not based solely upon the knowledge of the executing party, but includes the knowledge of the party, his/her agents, representatives and attorneys, unless privileged.

## INTERROGATORIES

1. Howard Michael Taffer, 428 Mark Place, Philadelphia, PA 19115, DOB, October 23, 1971, SSN, 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, height 6'0", weight, 165 pounds.

2. Plaintiff objects to the instructions and definitions contained in the Interrogatories to the extent they purport to impose obligations upon Plaintiff greater and/or different than those imposed by the Federal Rules of Civil Procedure.

3. Plaintiff object to the Interrogatories to the extent they call for information protected by attorney-client and/or attorney work product doctrine, and, to such extent, Plaintiff will not answer any such interrogatory or that portion of any such interrogatory which seeks such privileged information.

4. In addition to the objection stated in paragraph 3, supra, Plaintiff specifically objects to the Interrogatories to the extent that they request information protected by the attorney/client privilege or attorney-work-product-doctrine with respect to privileged communications with or attorney work product of THE IWEANOGES' FIRM and any other law firm or attorney with which whom Plaintiff may have had or may have a privileged attorney-client relationship.

5. Anthony Whitten objects to the extent that the Interrogatories, as framed, assume facts not in the evidence or imply erroneous conclusions of law.

6. To the extent that certain of the interrogatories are overly broad, unduly burdensome or seek to obtain information that is neither relevant to this action nor likely to lead to the discovery of admissible evidence, Plaintiff objects to those interrogatories.

7. Plaintiff reserves the right to further object to the interrogatories to the extent that additional objections may be appropriate.

2. I was on my way home from work and had called home to hear a man answer my girlfriend's mobile cell phone number. I thought that this person was somebody that I knew and didn't want in my apartment and when I came home no one was there. I entered through the rear entrance through my apartment's personally gated yard and directly into my apartment. Upon finding no one home, I exited through the rear entrance and proceeded to walk down the alley that runs behind my building that is adjacent to 18th Street, NW and runs parallel to U Street, Washington, D.C. I had only gotten perhaps 50 feet outside my building, walking towards 18th Street, when I heard just behind me the running footsteps of someone (an officer who I later found to be named Anthony Hector.) When I heard the footsteps they were right behind me and as I attempted to turn around and see who was approaching me I was struck to the ground with extreme force. I was kneed to the back of my head and ribs once on the ground, handcuffed and kicked in my left side. Never was I asked to stop, "freeze," or to identify myself in any way, nor were any reasonable steps taken to secure my identity and prevent the physical harm to myself that followed. I was later able to identify the person who had done this to me because as he walked away I noticed he was wearing plain clothes and his tee shirt had a Nautica emblem on the back. Other officers started to arrive at the scene and when I asked where is the person that did this to me one of the two officers who now in the alley standing just 20' to my forward left said to me that "we don't know who that person was, it was just some guy on the street and that we'll never see him again." At which time I responded, "I saw him... Where is the guy wearing the Nautica tee shirt?" At this time, Anthony Hector, the one who had tackled me from behind at full running speed, with all his force and all his weight, while wearing plain clothes, exited his vehicle which was parked, one half block down the alley behind me. I was left sitting on the ground for a long while, bloodied and bruised, and in need of medical attention, which I was denied. I was then taken to the police station, I believe 3D, and when the officers tried to book me they were verbally reprimanded for trying to do so with me in the battered physical condition I was in. They were told- "You should know better." At which time, due to my pleadings that I begged "please treat me right, I've done nothing wrong," they proceeded to take me from the precinct to Georgetown University Hospital rather than Howard University Hospital which was much closer for medical attention. I received approximately 18 stitches to my face to close my upper lip, which was split apart, and my chin where the flesh was literally ripped and hanging off my face. Some of the stitches were internal and dissolved, others were external and were

removed at a later date. I suffered damages to my left side and to both my knees that swelled up and made moving difficult for quite awhile after. To this day I still suffer from the pain and my face has scars that are apparent and prevent facial hair from growing on a patch on my chin.

After receiving treatment at Georgetown Hospital I was then taken back to 3D where I was booked and charged with breaking and entering into my own apartment (to which I had my own key which was in my possession), destruction of property (which we owned), and threats, and locked up for the entire weekend. All these charges were later dismissed.

After suffering in pain in jail for the weekend, I was then released. I filed a formal complaint with the department against Officer Anthony Hector.

Several weeks later as I walked down Euclid Street (after I had moved to an apartment further up 18th Street) in the Adams Morgan section of D.C., I was called from behind, "stop, come here, where are you going." When I turned around to see if it was me who being addressed, I saw two officers in full uniform, who were calling at me. I didn't know why they would be calling at me at which time I asked, "what did I do," and I was told to come back to them and they'll tell me. I was questioned and asked "what am I doing here, do I know anybody around here?" and my reply was "I am just walking and no, I don't know anyone who lives right here." They then directed me into a building that was located at approximately 17th and Euclid Streets, at which time the officer looked directly at me and said, "you don't remember me, do you?" At first I didn't recognize him because he was in uniform but I then realized it was Officer Anthony Hector who proceeded to threaten me by saying that if I ever filed another complaint against him he would make sure that I wouldn't walk away next time. Needless to say, this put the intended fear into me and I didn't file a complaint about his threat due to the fact that I believed he knew where I lived and knew the neighborhood within which I resided. Since he had already caused me such physical distress and I still had the scars to remind me, I had easy to imagine that he could and would try locating me any time he wanted, if so inclined. Moreover, his threat actually prevented me, due to my fear of him acting on it, from filing another complaint about the verbal threat itself.

Although I wanted to file the suit for damages against this officer, I did not file my claim against him for years and almost never filed it at all. In the end I was able to file the suit on the last day that the statute allowed me, which was three years to the date of the original incident, dated August 4, 2002. I always felt that if I were to file the suit, Anthony Hector would seek retribution against me. I felt much apprehension for many weeks proceeding and including the night the suit was filed. I had already been threatened that if I filed another complaint that Anthony Hector would make it so that "I wouldn't walk away next time." On August 4 I made a few phone calls fearing that Anthony Hector was coming to get me. In fear, I called my mother, and Jen Andrews, who is my former girlfriend from Washington, D.C., and Vivian Akl. In fear that Anthony Hector knew my new address and as not be caught in my apartment alone by him, I went to the roof of the building (15 S. Bank Street, Philadelphia, PA) where I was renting an apartment at that time. I became frightened now that he would find me on the roof of the building. In trying to keep myself safe from him, I accidentally managed to fall from the roof which was 5 stories high and suffered life threatening injuries, i.e., many broken bones which included a broken neck, broken pelvis, shattered arms, broken leg, broken ribs, punctured lung, lacerated kidneys and liver, had a my spleen removed and almost died. I was hospitalized for almost six months and had to relearn how to walk.

3. Officer Anthony Hector, a light-skinned black male, blind-side tackled me with the full weight of his body at a full running speed as his means of stopping me, a person who was simply walking from his apartment back to 18th Street, a very popular destination, after work on a Thursday night as I normally did. I was not running. I was not fleeing anyone, including him, nor does it state in his arrest report from that evening that at any time that I was attempting to run or flee from him. No reasonable methods were used in order to ascertain my identity or the reasons for my being where I was. I was there because that's where I and my girlfriend, Jen Andrews, lived. My cat lived there too, and I received my bills and other mail. I believe the force used was excessive due to my injuries and the unnecessary kicks to my left side while handcuffed. I believe no amount of force was necessary at all, and that if he had just simply asked me to stop I would have stopped and then that would have sufficed.

4. Jennifer Andrews, 802 Driggs Avenue, Brooklyn, NY 11211. Telephone number is 1-202-255-1001.

5. Jennifer Andrews, 802 Driggs Avenue, Brooklyn, NY 11211. Telephone number is 1-202-255-1001; Sandra Taffer, 428 Mark Place, Philadelphia, PA 19115, telephone number is 215-698-1446; Vivian Akl, Brooklyn, NY. (Her exact address and telephone number are not available.); All doctors and/or treating physicians and/or psychologists and or custodian of records named in Plaintiff's Rule 26(a)(1) and 26(a)(2)(B) statements in possession of Defendants.

6. I do not believe that the officers involved followed proper protocol/procedure in apprehending me and denying me proper medical treatment. I was also falsely charged, falsely imprisoned, and my rights were further violated when they later stopped and interrogated me for the purpose of making threats to my person and to my safety. Anthony Hector and Oscar Grajales in addition to other police officers involved in the incident. Plaintiff relies on the pleadings of this case and the court records and court file for this action. Plaintiff also reserves the right to supplement this answer as soon as additional information is received.

7. Lacerations to my upper lip and chin, which required approximately 18 stitches to close which I am scarred from to this day. I suffered blunt trauma to both knees, which were scraped and swollen. Scrapes to my arms and bruises to my left side from kicks received. Later in 2005, my injuries included a broken neck, broken pelvis, broken left leg, multiple rib fractures, broken left humerus, broken left wrist, shattered right elbow, shattered right wrist, lacerated kidneys, lacerated liver, splenectomy, punctured lung, chipped teeth and was in intensive care in a coma for approximately two weeks. In all I was then hospitalized for almost six months and continue to do physical therapy. I've also undergone multiple reconstructive surgeries to my right arm and to this day my right hand has gone from a fully paralyzed state to a semi-paralyzed state. Since I am right-handed, this makes every day tasks difficult. Standing up and walking are difficult for me and I can no longer run or jog. I also always live in fear that because of the incident and because of the threats associated with the incidents and because of this lawsuit as well that my long-term safety is jeopardized and I feel a sense of paranoia as a result.

8. Not applicable

9. The scarring on my face is permanent. The mental anguish and paranoia that I suffer seems to be permanent and even with treatment I do not believe that it will ever fully go away. My motion is limited and although I am told that I am lucky to even be alive and/or walking right now, simply walking and walking up stairs prove to be very difficult. Jogging or running is impossible. My right arm is permanently disfigured. I am told that further surgeries most likely will not fix it better than it already is. I have about 40-45 degrees of motion in my right arm. I have no (zero degrees) rotation in my right arm and my right wrist hardly bends. My right hand is now partially paralyzed from nerve damage, but was at one time, fully paralyzed. I cannot lift heavy objects with my right or left arm and constantly need assistance from others in almost everything I do. I am heavily scarred on my torso due to many various surgeries and due to infections that resulted from those surgeries. Both arms are heavily scarred permanently.

10. Objection. The interrogatory is unduly burdensome and request information beyond Plaintiff's expertise, but without waiving the objection see authorization for release of medical records attached to obtain medical records for information responsive to this Interrogatory.

11. Objection, this interrogatory is overly broad, compound and vague, but without waiving this objection, PATH, Inc., 8221 Castor Avenue, Philadelphia, PA 19152, 215-728-4565 – Peggy Backal, Psychologist and Dr. Sosnovsky, Psychiatrist; Robert Winn, M.D., Mazzoni Center, 1201 Chestnut Street, 3rd Floor, Philadelphia, PA 19107, 215-563-0658. In further responding, see medical records for detailed information.

12. None

13. None

14. Objection. Plaintiff objects to this Interrogatory to the extent that it is designed to propound four (4) Interrogatories in one, to circumvent the limitation set by the Court's scheduling Order, but without waiving this objection, the practice of Police Department not to discipline and adequately supervise its members as well as improper hiring procedure, inadequate training, and code of silence amongst its rank resulted in my injuries. The police department consistently ignored evidence of misconduct by subordinate officers, and sanctioned and covered up the wrongdoing of officers. Upon information and belief, Officer Hector had several prior incidents of use of excessive force, yet the District of Columbia failed to reprimand and sanction Officer Hector, which means that the conduct was sanctioned and condoned by the final policy maker in the Department. The Police Department does not respond to citizens complaints and the system setup to investigate citizen's complaint consists of police officer that also engaged in the cover-up. This is supported by the fact that the Police Department did not act on my complaint against Defendant Hector. The officers' knowledge that they would be protected for any improper conduct by their fellow police officers and partner was the impetuous for their actions against me.

15. See answer to Interrogatory number 2 and 14.

16. See answer to Interrogatory number 14.

17. Objection. The Interrogatory is vague and not relevant to the subject action, nor is it designed to lead to relevant information, but without waiving this objection I receive disability benefits and medical assistance as a result of the injuries sustained as a result of the incidents described above.

18. Objection. The information sought is not relevant to the subject action, nor is it designed to lead to admissible evidence.

19. See Answer to Interrogatory number 2. In further responding, I was told that the officers who brought me into 3D for booking were not allowed to bring me in looking like I did and they needed to take me out of there right now for treatment at a hospital.

20. Plaintiff is still compiling his out of pocket expenses and such computation will be provided as soon as they become available.

21. Objection. The Interrogatory is vague and unduly burdensome, but without waiving the objection, I currently receive $805.00 per month for disability; medical assistance benefits, and $145.00 in food stamps per month.

22. Objection. The Interrogatory is phrased as vague and unduly burdensome and goes beyond the relevant duration alleged in the complaint, but without waiving the objection, I was a waiter in many restaurants over the years. I was a waiter at a restaurant called Equinox owned by Chef Todd Gray, 818 Connecticut Avenue, NW, Washington, DC 20006, phone number, 1-202-331-8118 at the time of the incident dated August 4, 2002. As a result of my being falsely arrested on August 4, 2002, and locked up over the weekend, I was fired from my position as waiter because I was unable to show up for the next shift that I had been assigned to work the next evening. As a result of me losing that job, I lost approximately $5000 in income. I later moved to Philadelphia, PA and worked at a few restaurants there too up until the time of the incident dated August 5, 2005. The injuries sustained are considered career-ending injuries and I can no longer work in the restaurant industry as a waiter or bar tender ever again.

23. See answer to Interrogatory number 22. Additionally, after the incident dated August 5, 2005, I was physically unable to work in any capacity for approximately 1.5 years and did not receive any income. My sole employment thereafter began around January 2007.

24. See Plaintiff's Rule 26(a)(2)(B) statements already in possession of Defendants' counsel.

25. Officer Grajales conspired with Officer Anthony Hector making terrorist threats against my person. Charles H. Ramsey and others failed to train, supervise, control and discipline defendant officers and this failure was a result of official policy, or the custom, practice, of the District of Columbia, and that said conduct or omission caused the deprivation of rights secured to me, Howard M. Taffer, under the constitution and laws of the United States of America and the

Anthony Hector that had tackled me and caused the injuries to me on August 4, 2002.

District of Columbia. Other unnamed officers at the scene conspired to hide the identity of

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

_SEE ATTACHED_
_____
HOWARD TAPLER


Jude C. Iweanoge
THE IWEANOGES' FIRM P.C.
IWEANOGE LAW CENTER
1026 Monroe Street, NE
Washington, D.C. 20017-1760
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: jci@iweanogesfirm.com

AS TO OBJECTIONS:

_____
Jude C. Iweanoge, Esquire
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April, 2007, a copy of the foregoing Answer to Interrogatories and Response to Request for Production of Documents was hand delivered to Shana L. Frost, AAG, 441 4th Street, NW, 6th Floor South, Washington, MD 20001, Attorney for Defendants.

_____
Jude C. Iwanoge

District of Columbia. Other unnamed officers at the scene conspired to hide the identity of Anthony Hector that had tackled me and caused the injuries to me on August 4, 2002.

I SOLEMNLY AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THE FOREGOING DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

_____
HOWARD TAPLER

Jude C. Iweanoge
THE IWEANOGES' FIRM P.C.
IWEANOGE LAW CENTER
1026 Monroe Street, NE
Washington, D.C. 20017-1760
Phone: (202) 347-7026
Fax: (202) 347-7108
Email:jcd@iweanogesfirm.com

AS TO OBJECTIONS:

_____
Jude C. Iweanoge, Esquire
Attorney for Plaintiff

### CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April, 2007, a copy of the foregoing Answer to Interrogatories and Response to Request for Production of Documents was hand delivered to Shana L. Frost, AAG, 441 4th Street, NW, 6th Floor South, Washington, MD 20001, Attorney for Defendants.

_____
Jude C. Iweanoge

Page 11 of 11