UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HOWARD TAFLER, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-1563 (PLF) |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants hereby reply to Plaintiff's Opposition to their Motion for Summary Judgment:

**I.      Plaintiff Has Conceded That Judgment Should Be Granted for Defendants on Plaintiff's Claim for Failure to Train, Supervise and Control**

Plaintiff has failed to address Defendants' arguments that Plaintiff's common law claim of failure to train, supervise and control should be dismissed as Plaintiff has failed to proffer any evidence to support such a claim, and as Plaintiff has failed to proffer an expert to testify to the standard of care for the hiring, training and supervision of police officers. *See* Defs.' Mem. in Supp. of Mot. for S.J. at 16-19. Thus, the Court should treat this argument as conceded and grant judgment in favor of the Defendants on Plaintiff's claim of failure to train, supervise and control (Count IV).

**II.     Plaintiff Has Not Adequately Presented a Genuine Factual Dispute**

Local Rule 7(h) requires that each party submitting a motion for summary judgment attach a statement of material facts to which that party contends there is no

genuine issue, with specific citations to those portions of the record upon which the party relies. LCvR 7(h). The party opposing such a motion must, in turn, submit a statement of genuine issues enumerating all material facts which the party contends are at issue and thus require litigation. *Id.* Where the opposing party fails to discharge this obligation, a court may take all facts alleged by the movant as admitted. *Id.*

Here, Plaintiff has not offered any evidence to controvert the facts set forth in Defendant's Statement of Undisputed Material Facts. The Defendant listed eight undisputed facts in its Statement with citations to the record. These facts should be deemed admitted as Plaintiff did not respond to all these enumerated facts. Thus, the Court should deem admitted the following facts: on August 4, 2002, Plaintiff's live-in girlfriend placed a 911 call reporting to the dispatcher that Plaintiff was breaking into her house and was threatening to kill her (Defs.' Stmt. ¶ 1); Plaintiff's girlfriend gave a physical description of Plaintiff (Defs.' Stmt. ¶ 2); Plaintiff's girlfriend indicated that Plaintiff was intoxicated on liquor and crack, known to carry a knife, and a "black belt." (Defs.' Stmt. ¶ 3). The Court should also deemed admitted that Plaintiff matched the physical description of the suspect provided to Officer Hector by the dispatcher. (Defs.' Stmt. ¶ 5).

In addition to failing to dispute Defendants' Statement of Undisputed Material Facts, Plaintiff has offered his own statement of "disputed" material facts that, in actuality, are either not in dispute or not material. For the purposes of summary judgment, Defendants accepted Plaintiff's version of the force used by Officer Hector. Specifically, Defendants did not dispute that Plaintiff was tackled from behind and knocked to the ground by Officer Hector, who was wearing plain clothes and driving an

unmarked Crown Victoria.  *See* Pl.'s Stmt. ¶¶ 1-2; Defs.' Stmt. ¶ 6.  Defendants also did not dispute that Plaintiff was not taken to the hospital until after he was taken to the Third District Police Station.  Pl.'s Stmt. ¶ 5; Defs.' Stmt. ¶ 7.  Defendants also did not dispute that Plaintiff was struck while handcuffed.  Pl.'s Stmt. ¶ 4; Defs.' Stmt. ¶ 6.

The remainder of the facts Plaintiff asserts are not material to the issues before the Court.  For example, the allegations relating to Plaintiff's state of mind, Pl.'s Stmt. ¶ 3, are immaterial to what Officer Hector perceived during the incident and therefore not relevant to the inquiry the Court must make in addressing Officer Hector's entitlement to qualified immunity.  Additionally, as explained herein, actions relating to Officer Hector's employment with the Metropolitan Police Department ("MPD") subsequent to and unrelated to the incident with Plaintiff are not relevant.  Pl.'s Stmt. ¶ 6.

### III. The District Is Entitled to Judgment on Plaintiff's Constitutional Municipal Liability Claim

As explained in *Monell v. Dep't of Social Servs. of the City of New York*, the District can be held liable for a plaintiff's constitutional claims only if the plaintiff alleges facts that indicate his injury was caused by a policy or custom of the District.  436 U.S. 658, 694 (1978); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).  According to the Supreme Court decision in *Monell*:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983."

436 U.S. at 694.

The Supreme Court further held in *Oklahoma City* that, "at the very least there must be an affirmative link between the policy and the particular constitutional violation

3

alleged." *Oklahoma City*, 471 U.S. at 824. The *Oklahoma City* decision interpreted *Monell* as holding that "municipal liability should not be imposed *when the municipality was not itself at fault*." *Id.* at 818 (emphasis added).

Since the seminal *Monell* ruling, courts have developed four different types of proof that can establish such municipal liability. In his Opposition, Plaintiff confuses the separate standards so as to make it impossible to discern exactly which theory Plaintiff intends to assert.

First, a plaintiff can satisfy *Monell* by setting forth direct evidence that the municipality adopted an unconstitutional policy. This can be done by pointing to a formally adopted policy—such as a statute or regulation—that violates the constitutional rights of the individual. *Monell*, 436 U.S. at 694.

Direct evidence of a municipal policy also can be proven by an unconstitutional decision or action taken by an official policymaker of the municipality. *Pembaur v. City of Cincinatti*, 475 U.S. 469, 480-81 (1986). To proceed under this theory, the Plaintiff must demonstrate the existence of an official decision maker with "final authority to establish municipal policy with respect to the action ordered." *Id.* at 481.

If there is no direct evidence of an unconstitutional municipal policy, a plaintiff still can establish municipal liability if he can provide sufficient circumstantial evidence that the municipality had informally adopted an unconstitutional policy. This is a much more difficult burden to prove. To survive summary judgment, a plaintiff must show that municipal policymakers were deliberately indifferent to constitutional violations performed by municipal employees. This generally can be shown by specific statistical evidence, or by setting forth a series of similar incidents that were known to municipal

4

officials, but not addressed or resolved by those officials. *Carter v. District of Columbia*, 795 F.2d 116, 124-126 (D.C. Cir. 1986).

Finally, a plaintiff can establish municipal liability by showing that the municipality failed to adequately train and/or supervise its employees. To satisfy such a standard, a plaintiff must provide evidence that officials knew or should have known of a specific training need, that failure to address that need was likely to result in violation of individual constitutional rights, and that the officials were deliberately indifferent to the need for such training. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Once a plaintiff has proven—by any of the above four methods—that a municipality has adopted a policy or custom of violating constitutional rights, he still must prove that the policy or custom caused the constitutional injury in question. *Oklahoma City*, 471 U.S. at 823. The plaintiff must prove that the policy was the "moving force" behind the alleged constitutional violation. *Id.*

In this case, Plaintiff cannot establish a formally adopted policy that violates the constitutional rights of individuals. Plaintiff has cited no statute or regulation that he claims is unconstitutional.

To the extent that Plaintiff seeks to establish an informally adopted policy that violates the constitutional rights of individuals, Plaintiff has offered no evidence to make such a showing. Plaintiff asserts that MPD "has a policy of nonsupervision of police officers and cover-up that amounted to a deliberate indifference to the use by those officers of excessive force." Opp. at 7. Plaintiff, however, has offered no evidence relating to any use of force by any MPD officer other than Officer Hector.[1]

---

[1] Plaintiff also claims that Officer Hector failed to complete a use of force incident report regarding the alleged excessive force Officer Hector used in his arrest of Plaintiff. Opp. at 8. Plaintiff cites General

5

Plaintiff also offers a complaint filed against Officer Hector prior to Plaintiff's arrest. Opp. at 8. Plaintiff admits, however, that the allegations in this complaint were not sustained due to the failure of the complainant to cooperate with the investigation. *Id.* Plaintiff asserts, without persuasive support, that the existence of an unsupported allegation should have put a supervisor on notice that Officer Hector could have injured Plaintiff.[2] Plaintiff's contention lacks logic – the fact that the allegation was not supported indicates that there was no actual basis for a supervisor to be on notice of any potential wrongdoing by Officer Hector. Moreover, as the *Orpiano* case demonstrates, an isolated incident is insufficient to demonstrate deliberate indifference on the part of the municipality.

Plaintiff incorrectly asserts that "a plaintiff in a section 1983 claim is not required to allege more than one incident of misconduct." Pl.'s Opp. at 7. First, at the summary judgment stage, the plaintiff is required to do more than just "allege" misconduct; he must offer evidentiary proof of misconduct. Second, "section 1983 does not require a plaintiff even to *prove* multiple instances of misconduct if the plaintiff can prove an unconstitutional municipal policy responsible for a single instance of misconduct." *Atchison v. District of Columbia,* 73 F.3d 418, 423 (D.C. Cir. 1996) (emphasis in original), citing *Oklahoma City,* 471 U.S. at 823-24 (plurality); *id.* at 833 (Brennan, J.,

---

Order 901.07 § VI in support. This General Order – a direct result of the Memorandum of Understanding between the MPD and the Department of Justice - became effective October 7, 2002, which was after Plaintiff's arrest in August, 2002. Thus, there was no requirement that Officer Hector complete a use of force incident report in relation to any injury sustained by Plaintiff. Officer Hector did fill out an Arrestee Injury Report, as required. *See* Ex. A.

[2] Plaintiff relies on *Orpiano v. Johnson*, 632 F.2d 1096 (4th Cir. 1980), *cert. denied* 450 U.S. 929 (1981), for the proposition that "when a supervisor should know of such propensity but does not, some courts have held that he has the duty to ascertain the truth about his personnel, even though there may be significant barriers to obtaining the information." Pl.'s Opp. at 8. Plaintiff's reliance upon the *Orpiano* case is misplaced; the court in *Orpiano* specifically stated that a "pervasive risk of harm . . . may not ordinarily be shown by pointing to a single incident or isolated incidents" as Plaintiff does here. *Orpiano,* 632 F.2d at 1101 (internal quotations and citations omitted).

concurring in part and concurring in the judgment).  As demonstrated, Plaintiff cannot show an unconstitutional municipal policy; thus, reliance on a single instance of misconduct cannot create liability for the District

Plaintiff also points to an incident involving Officer Hector that took place on or about January 26, 2003 – months after Plaintiff's arrest.  First, Plaintiff's contention that MPD took no action regarding this incident until April 27, 2005 simply is false.  In fact, pursuant to procedure, the Office of Citizen Complaint Review ("OCCR") began the administrative process in 2003 and conducted an investigation.  OCCR submitted a 32-page Report of Investigation on August 18, 2004, and an OCCR hearing examiner reached a merits determination on October 6, 2004, which was then referred to MPD for further action.  *See* Ex. B & Ex. C (under seal pursuant to Protective Order).  Officer Hector was subsequently terminated as a result of the 2003 incident.  Rather than display deliberate indifference, MPD's handling of the 2003 incident demonstrates that the proper administrative procedures were followed.  Further, this incident occurred after Plaintiff's arrest and therefore cannot prove MPD was deliberately indifferent at the time of Plaintiff's arrest as there had been no sustained complaints against Officer Hector at that time.

To the extent that Plaintiff is attempting to hinge municipal liability on a decision made by an official policymaker, Pl.'s Opp. at 9, Plaintiff cannot make the required evidentiary showing as Plaintiff has not met the burden articulated by the Supreme Court to establish such a claim.  In *Pembaur*, the Supreme Court explained the limitations of using the "policymaker" approach to satisfy the rigid *Monell* standard.  475 U.S. at 481.  There, the Court first explained that:

7

> The conclusion that tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's "official policy" is contained in this discussion. The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.

*Id.* at 479. The Court then held that, under this standard, "[m]unicipal liability attaches only where the decision maker possesses *final authority* to establish municipal policy *with respect to the action ordered.*" *Id.* at 481 (emphasis added).

Under this standard, to be a "policymaker" for purposes of municipal liability, it is not enough for a particular official to have "discretion in the exercise of particular functions." *Id.* at 482. Instead, the Court wrote, "[t]he official must also be responsible for establishing *final* government policy respecting such activity before the municipality can be held liable." *Id.* at 482-83 (emphasis added); *see also Morgan v. Barry*, 785 F. Supp. 187, 194 (D.D.C. 1992) ("the authority to make policy that will give rise to municipal liability is final policy…. The District of Columbia can be held responsible under § 1983 for the eviction of the plaintiff if it was the product of a sanctioned policy ordered or allowed to exist by a municipal official with final policymaking authority in that area.").

Here, the official policymakers are the Mayor and the Chief of Police. Plaintiff has not cited to any action or any policy advocated by these individuals. Instead, Plaintiff cites to character testimony offered by a sergeant and a captain taken during Officer Hector's termination hearing.[3] First, neither of these individuals possess final

---

[3] Plaintiff's citation to Captain Hill's testimony that "genocide" is an appropriate grounds for termination is grossly misleading. Pl.'s Opp. at 8. Captain Hill was a witness for Officer Hector who testified on Officer Hector's behalf at the termination hearing. When Captain Hill was asked what Officer Hector could be charged with that would require termination as an appropriate sanction, Captain Hill gave genocide simply as an example, and then stated that there were "numerous [charges] [Officer Hector] could have been

policymaking authority. Second, neither of these individuals were creating any policy; they simply were appearing on behalf of Officer Hector as personal character witnesses. It is clear that Plaintiff cannot demonstrate any particular policy on behalf of the municipality.

Armed with only one unsubstantiated allegation of misconduct on Officer Hector's part from before Plaintiff's arrest, and one subsequent incident of alleged wrongdoing by Officer Hector where MPD took immediate action through the administrative process, Plaintiff makes the conclusory leap that the alleged "custom of failure to investigate, reprimand and supervise resulted in Plaintiff's injury." Opp. at 10. Plaintiff offers no evidence for this dubious causal connection. Instead, Plaintiff cites to *Sledd v. Linsday,* 102 F.3d 282 (7th Cir. 1996). In *Sledd,* the Seventh Circuit Court reversed the district court's Rule 12(b)(6) dismissal of a municipal liability claim where the plaintiff "allege[d] that the City and the [police department] maintained a code of silence; that disciplinary complaints almost never resulted in official censure; and that this practice hurt him in particular, by making the officers believe their actions would never be scrutinized." *Sledd,* 102 F.3d at 289. In this litigation, we are clearly beyond the 12(b)(6) stage; at summary judgment, Plaintiff must do more than make mere allegations, he must present *evidence*. Plaintiff has not done so. Thus, the District of Columbia is entitled to judgment in its favor on Plaintiff's *Monell* claims.

IV. **Officer Hector Is Entitled to Qualified Immunity**

At this juncture, the evidence demonstrates that Officer Hector is entitled to qualified immunity. In attempting to rebut the arguments made by Defendants that

---

engage[d] in that would justify termination." Pl.'s Opp., Ex. 8 at 12. Such testimony falls far short of displaying deliberate indifference, even if Captain Hill could be considered to be a final policymaker exercising final policymaking authority.

demonstrate that qualified immunity is warranted, Plaintiff attempts to create a factual dispute where none exists. Opp. at 11-16. Here, for the purposes of summary judgment, Defendants have taken all of the facts asserted by Plaintiff as true. Thus, the fact that there are police reports and deposition testimony that contradicts Plaintiff's version of the event is of no moment as Defendants do not rely on any evidence that is contrary to Plaintiff's version of the force used.

While Defendants accept Plaintiff's version of the force used for the purposes of summary judgment, Plaintiff also does not dispute the facts leading up to the force used by Officer Hector. Specifically, Plaintiff does not dispute that his girlfriend made an emergency call to the police because Plaintiff had threatened to kill her, that Plaintiff was high on alcohol and cocaine (crack), that Plaintiff was known to carry a weapon, and that Plaintiff was a black belt. Plaintiff also does not dispute that this information would have been broadcast to the officers responding to the scene. Faced with the potential danger that Plaintiff objectively posed, Officer Hector's actions of tackling the Plaintiff from behind were reasonable. Given the dangerous information provided by Plaintiff's girlfriend, it is not reasonable to require Officer Hector to wait for Plaintiff to wield a weapon first before taking action. Such a requirement would place the officer in an unwise and further dangerous situation. Clearly, there cannot be a Fourth Amendment violation when an officer uses physical force, which does not include the more serious force of a weapon, to stop a suspect that has threatened to kill the victim, is high on alcohol and crack, is known to carry a weapon, and is a black belt.

In attempting to make a constitutional claim against Officer Hector, Plaintiff makes another conclusory leap by arguing that Plaintiff's Fourth Amendment rights were

violated because Officer Hector used excessive force and that "every officer knows that the use of excessive force violates a clearly established constitutional right." Opp. at 12. Plaintiff's argument is lacking in analysis. In determining whether a violation of the Fourth Amendment has occurred, a court must examine the force used by an officer in making an arrest in light of the circumstances surrounding the arrest. *Graham v. Connor,* 490 U.S. 386, 396-97 (1989).

Even assuming that there was a constitutional violation, Officer Hector is entitled to qualified immunity. Plaintiff does not address the controlling precedent cited by Defendants where qualified immunity was upheld in circumstances where similar force was used to effectuate an arrest. Defs.' Mem. in Supp. of Mot. for S.J. at 14-16. Instead, Plaintiff cites his own testimony as evidence that he posed no threat to the officers once he was handcuffed. Opp. at 11. Plaintiff also claims that he did not know that his girlfriend had called the police, nor did he know that Officer Hector was a police officer and thus he could not have been fleeing from the police. Opp. at 14. In addressing a question of qualified immunity, however, the plaintiff's state of mind is irrelevant. In addition, Plaintiff does not and cannot dispute that his girlfriend called the police and provided the information described above.

Plaintiff also attempts to argue that Officer Hector committed a constitutional violation by failing to abide by an MPD General Order. "It is well-settled that evidence tending to show a violation of an internal operating procedure or guideline existing at the state law level is not only insufficient to prove a violation of the United States Constitution, but it is also irrelevant to such a claim." *Fernandors v. District of Columbia,* 2006 U.S. Dist. LEXIS 9236 *3-*4 (D.D.C. Feb. 23, 2006), citing *Kraushaar*

11

*v. Flanigan,* 45 F.3d 1040, 1047, 1049 (7th Cir. 1995) ("plaintiff cannot rely upon the provisions of state law to determine what conduct is reasonable under the federal Constitution" and holding that "state-created liberty interests do not create federally enforceable rights"); *United States v. Moore,* 36 F.3d 127, 308 U.S. App. D.C. 313, 1994 WL 535734 at *2 (D.C. Cir. 1994) (unpublished decision) (recognizing that a strip search conducted in violation of a Special Order of the Metropolitan Police Department may still pass muster under the Fourth Amendment's reasonableness calculus); *Doe v. Burnham,* 6 F.3d 476, 480 (7th Cir. 1993) (stating that "just because [a state] chooses to regulate police behavior in a certain way does not mean the police officers violate the Constitution by transgressing those rules" and recognizing that "the norms embodied in the Constitution and the norms authorized by [a state] legislature are not necessarily interchangeable . . . a state may provide greater protections under its laws than the Constitution requires").  Moreover, Plaintiff cites a general order that requires officers to use verbal warnings *only if possible*.  MPD General Order 901.7(v)(B).  A reasonable officer would not expect that verbal persuasion would be effective when facing a drunk individual on crack who was threatening to kill someone and was believed to be armed.  Again, a reasonable officer would not be expected to wait to stop a suspect until the suspect wields a weapon or poses an even greater threat.

      Accordingly, when considering the facts known to Officer Hector and Officer Hector's use of force in effectuating Plaintiff's arrest, Defendants submit that, even if a constitutional violation is shown, Officer Hector is entitled to qualified immunity for his actions.

**V.      Conclusion**

For the reasons set forth above and in Defendants' Memorandum in Support of their Motion for Summary Judgment, Defendants respectfully request that the Court dismiss this matter against them and enter judgment in their favor.

                Respectfully submitted,

                LINDA SINGER
                Attorney General for the District of Columbia

                GEORGE C. VALENTINE
                Deputy Attorney General
                Civil Litigation Division

                _____
                NICOLE L. LYNCH (471953)
                Chief, Section II

                _____
                SHANA L. FROST (458021)
                Assistant Attorney General
                441 4th Street, NW, 6th Floor South
                Washington, DC 20001
                (202) 724-6534
                Fax:  (202) 727-3625
                shana.frost@dc.gov